# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**SUZY ST. JOHN**
Indianapolis, Indiana



FILED
Jan 21 2014, 10:13 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF THE PETITION FOR )
TEMPORARY PROTECTIVE ORDER: )
                                                  )
A.N., )
                                                  )
        Appellant-Respondent, )
                                                  )
           vs. )        No. 49A04-1212-PO-649
                                                  )
K.G., )
                                                  )
        Appellee-Petitioner. )

## APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Barbara Crawford, Judge
Cause No. 49G21-1005-PO-22136

**January 21, 2014**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

Appellant-Respondent, A.N., appeals the trial court's Order of contempt in favor of Appellee-Petitioner, K.G.

We affirm.

## ISSUE

A.N. raises two issues, which we consolidate and restate as the following issue: Whether trial court improperly acted as advocate for K.G. thereby violating her due process right to a fair trial before an impartial tribunal.

## FACTS AND PROCEDURAL HISTORY

On May 18, 2010, K.G. filed an *ex parte* motion for a protective order against A.N., which the trial court granted the same day. On June 11, 2010, following a hearing, the trial court granted him a protective order for two years. The protective order prohibited A.N. from acts of violence, stalking, and "harassing, annoying, telephoning, contacting or directly or indirectly communicating with" K.G. and three other persons. (Appellant's App. p. 29).

On December 8, 2010, K.G. filed a petition for contempt against A.N. He alleged, among other things, that A.N. had made numerous phone calls to his home phone and to his employer. On March 30, 2011, K.G. filed another petition for contempt, alleging that, in addition to "non-stop" phone calls to his home phone and his ex-wife's phone, A.N. had "spray painted [his] knew [sic] house." (Appellant's App. p. 39). That same day, the trial court found "probable cause for contempt" and set the matter for a hearing.

2

(Appellant's App. p. 9). On April 5, 2011, the trial court held a hearing and found A.N. in contempt. She received a suspended sentence of 120 days in the Marion County Jail and was ordered to complete 80 hours of community service and pay a fine.

On August 12, 2011, K.G. filed his next petition for contempt (the August 12 Petition), in which he claimed that A.N. had made numerous calls to his home and that he possessed a picture of his home phone that recorded the telephone number A.N. used. K.G. alleged that on one occasion, he spoke to A.N., who said, "I'm back[.] [Y]ou better watch your ass." (Appellant's App. p. 48). When reminded by K.G. that a protective order was in place, A.N. allegedly responded, "F*** that protective order[.] I can do what I want." (Appellant's App. p. 48).

On November 10, 2011, K.G. filed a motion to modify the protective order, asserting that A.N. had harassed his family members "inside and outside [his] home." (Appellant's App. p. 54). That same day, K.G. also filed a petition for contempt (the November 10 Petition), alleging that he received "over 100 private calls to [his] home phone and cell phone from A.N." (Appellant's App. p. 60). A.N. also allegedly harassed K.G.'s ex-wife, her mother, and a niece. A.N. had "been seen around the residence where [K.G.'s] children live" and harassed "them threw [sic] thier [sic] [F]acebook accounts." (Appellant's App. p. 60). K.G. also stated that the police had been to his home on three different occasions, that A.N. had made calls to his place of employment, and that his water had been shut off in response to A.N. telling the water company that K.G. had moved.

3

On November 17, 2011, K.G. filed an "Information for Contempt." (Appellant's App. p. 62). On November 21, 2011, the trial court found probable cause for contempt and set the matter for a hearing. On July 6, 2012, K.G. filed a motion to extend his protective order against A.N., alleging that the June 11, 2010 protective order had expired and that he had been to court "no less than six times on issues of [A.N.'s] repeated violations of this order." (Appellant's App. p. 87). That same day, the trial court extended the protective order for an additional year to July 6, 2013.[1]

On November 15, 2012, the trial court held a hearing on the Information for Contempt and K.G.'s multiple contempt petitions, along with two separate contempt petitions filed against A.N. by different parties, R.R. and M.G. A.N. was represented by counsel and alleged at the outset that she could not get a fair hearing and had previously filed three complaints against the trial judge. M.G.'s attorney protested, alleging that A.N. had not filed a written motion and was engaging in dilatory tactics. After investigation, the trial court proceeded with its hearing on R.R.'s contempt petition. A.N. testified that she had been employed by a company but was fired because she had "looked in the records of [T.B.], who used to be [K.G.'s] ex-wife to get her information." (Supplemental Transcript p. 115). Although declining to find A.N. in contempt regarding R.R.'s petition, the trial court extended his protective order against A.N. Similarly, the trial court extended M.G.'s protective order against A.N. after M.G. moved to dismiss her

---

[1] Both the CCS and the trial court's Order on Petitioner's Motion to Extend Protective Order reflect that the protective order was extended to July 6, 2013. However, the trial court's Order for Protection issued on the same day extended the protective order to July 6, 2014.

4

contempt petition. The trial court continued the proceedings on the Information for Contempt and K.G.'s multiple contempt petitions.

On November 30, 2012, the trial court held a second hearing. K.G. appeared *pro se* and A.N. was represented by the same counsel. A.N. renewed her concern that she could not receive a fair hearing, which the trial court rejected. Beginning with the August 12 Petition, the trial court questioned K.G. on the factual background. K.G. described a phone call from A.N. where, after he told A.N. to stop calling, A.N. replied, "[y]ou better watch your ass." (Transcript p. 13). A.N. objected, but the trial court overruled it, stating that "[t]his is a statement against a party opponent." (Tr. p. 13). K.G. also testified that he had a photograph of his house phone depicting the telephone number that A.N. had used when calling him. The trial court questioned K.G. on whether the photograph was "a true and accurate depiction of how [his] phone appeared on […] August 11[, 2011]?" (Tr. p. 15). K.G. indicated it was, and the trial court admitted the photograph as Exhibit 1 over objection.

K.G. next testified on the facts underlying his November 10 Petition. In particular, K.G. described the events of October 31, 2011, when the water to his home was turned off by the water company. K.G. stated that his wife called the water company for an explanation and was told that "someone called in." (Tr. p. 28). A.N. objected on hearsay grounds, to which the trial court replied, "All right," but continued questioning K.G. (Tr. p. 28). K.G. explained that it was strange for someone to tell the water company that "we moved," and A.N. objected again. (Tr. p. 28). After replying "All

5

right," the trial court asked K.G. what he did in response after his wife spoke to the water company. (Tr. p. 28). K.G. replied that "[t]he water company told us that someone had called in," and A.N. objected. (Tr. p. 28). This time the trial court expressly overruled A.N.'s objection.

The trial court also made a number of objections and *sua sponte* rulings from the bench. First, during A.N.'s cross-examination of K.G., the trial court explained that A.N.'s counsel had mischaracterized K.G.'s testimony about A.N.'s purported telephone number. Thereafter, the trial court objected to "argumentative" questions from A.N.'s counsel during his cross-examination of K.G. (Tr. pp. 39, 46, 55). Following cross-examination, the trial court resumed its questioning by asking K.G. why he believed that A.N. had the information necessary to enable the water company to turn off his water. K.G. referenced A.N.'s testimony given at the hearing on R.R.'s contempt petition. A.N. objected, but the trial court overruled it, noting that A.N.'s counsel had attended the prior hearing. At the conclusion of its questioning, the trial court asked A.N. whether the telephone number depicted in Exhibit 1 had ever belonged to her, which A.N. denied. During A.N.'s closing argument, the trial court objected to A.N.'s attempt to discredit K.G.'s testimony on whether A.N. had been around his children, stating that A.N. had elicited the objectionable response on cross-examination.

Thereafter, the trial court found that A.N. violated the protective order and ordered her 120 day sentence executed and placed her on home detention. Explaining its reasoning, that trial court stated

that the evidence that Mr. K.G. presented in the form of the -- uh, photograph of the telephone -- his home telephone -- and he says that at that time, he picked up the phone and the voice on the other hand -- on the other end was Miss A.N.. And her words were to her [sic] was that she was back. There's been no showing of any motivation Mr. K.G. would have other than for her to simply leave him alone; no phone calls, no nothing.

***

[M]y um, decision was based on the fact that this phone number showed up on more than one occasion to Mr. -- uh, Mr. K.G.

Um, he associated that number with you. One of the times he answered the phone when that number was showing, it was your voice on it. That was the basis for my decision.

(Tr. pp. 71, 73-74). K.G. later asked "[H]ow much longer can [the protective order] be extended?" (Tr. p. 79). After confirming that R.R.'s and M.G.'s protective orders had been extended, A.N.'s counsel replied, "[N]o objection to the extension." (Tr. p. 80). The trial court thereafter extended the protective order to November 29, 2040, for a total of 28 years.

A.N. now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

At the outset, we note that K.G. did not file an appellee's brief. When an appellee does not submit a brief, an appellant may prevail by establishing a *prima facie* case of error, *i.e.*, error at first sight, on first appearance, or on the face of it. *Elrod v. Brooks*, 910 N.E.2d 231, 233 (Ind. Ct. App. 2009). By using a *prima facie* error standard, this court is relieved of the burden of developing arguments for the appellee. *Id*.

I. *Fundamental Error*

7

A.N. argues that the trial court violated her due process right to a fair hearing. Specifically, she alleges that the trial court improperly acted as advocate during the contempt proceedings by questioning K.G., responding to A.N.'s objections, and interposing objections during cross-examination and A.N.'s closing argument. However, A.N. admits that she "did not object to specific instances of judicial intervention at the hearing." (Appellant's Br. p. 7). Generally, a contemporaneous objection is required to preserve an issue for appeal. *See Anderson v. State*, 653 N.E.2d 1048, 1051 (Ind. Ct. App. 1995). Since this case was a bench trial, A.N. had to make a contemporaneous objection to the trial court's actions. *See Rosendaul v. State*, 864 N.E.2d 1110, 1115 (Ind. Ct. App. 2007), *trans. denied*. Therefore, in order to prevail A.N. must establish fundamental error. *See id.*

To qualify as fundamental error, "an error must be so prejudicial to the rights of the defendant as to make a fair trial impossible." *Willey v. State*, 712 N.E.2d 434, 444-45 (Ind. 1999). The error "must constitute a blatant violation of basic principles, the harm, or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." *Wilson v. State*, 514 N.E.2d 282, 284 (Ind. 1987). We acknowledge that, on occasion, improper judicial intervention has been held to be fundamental error. *See, e.g., Kennedy v. State*, 280 N.E.2d 611, 615 (Ind. 1972).

## II. *Judicial Impartiality*

It is well established that a trial before an impartial judge is an essential element of due process. *Abernathy v. State*, 524 N.E.2d 12, 13 (Ind. 1988). A violation of due

8

process occurs where a trial judge combines the roles of judge and advocate. *In re Roberts*, 723 N.E.2d 744, 747 (Ind. Ct. App. 2000). However, a trial judge may intervene in the fact finding process in an effort to promote clarity or dispel obscurity, so long as it is done in an impartial manner. *See Kennedy*, 280 N.E.2d at 620.

This is particularly so in a bench trial where a judge's discretion to intervene is greater than before juries. *Ware v. State*, 560 N.E.2d 536, 539 (Ind. Ct. App. 1990), *trans. denied*. The opportunity to influence the jury is not present in a bench trial. *Rosendaul*, 864 N.E.2d at 1115. Thus, in a bench trial, the judge may, in his discretion, ask questions of a witness to aid in the fact finding process as long as it is done in an impartial manner and the defendant is not prejudiced. *Ware*, 560 N.E.2d at 539.

## A. *Foundational Questions*

A.N.'s first claim concerns the trial court's foundational questions to K.G. regarding Exhibit 1, a photograph of K.G.'s cell phone which depicted a telephone number that he claimed A.N. used to call him. Because K.G. was a *pro se* litigant, A.N. contends that he had the responsibility of establishing the admissibility of Exhibit 1. By questioning K.G. about the photograph, A.N. argues that the trial court assumed an adversarial role when it essentially laid a foundation for the exhibit's admission.

The purpose of allowing the judge to question witnesses is to permit the court to develop the truth or obtain facts which may have been overlooked by the parties. *Griffin v. State*, 698 N.E.2d 1261, 1265 (Ind. Ct. App. 1998), *trans. denied*. To make a showing of reversible error, the defendant must show that the trial judge's questioning of

witnesses was harmful and prejudicial to his case. *Id.* A trial court does not improperly take on an adversarial role in propounding its questions, even if the court lays a foundation for the witness to answer. *Trotter v. State*, 733 N.E.2d 527, 532 (Ind. Ct. App. 2000), *trans. denied.* Nor does it abuse its discretion by asking questions which ultimately aid a party in laying a foundation for an exhibit. *See State v. Covell*, 580 N.E.2d 704, 707 (Ind. Ct. App. 1991).

Here, the trial court's questioning was aimed at completing the factual background in K.G.'s contempt petition. K.G. alleged that he had a photograph depicting the number used by A.N. in his August 12 Petition. When examining K.G. on the facts asserted in his August 12 Petition, the trial court asked about the photograph, and K.G. testified "that's my house phone" "with the caller ID" "and it shows what time the call -- I answered it." (Tr. p. 14). The trial court then asked K.G. what the photograph represented and whether those representations were accurate.

The record shows that the trial court's questions were neutral, served to clarify K.G.'s testimony, and did not discredit A.N. or her defense. Although A.N. alleges prejudice since the trial court cited the photograph when explaining its rationale for finding A.N. in contempt, A.N. was not prejudiced because she cross-examined K.G. on the photograph. We therefore conclude that the trial court did not act as an advocate by asking K.G. foundational questions regarding the photograph. *See Trotter*, 733 N.E.2d at 532.

## B. *Trial Court Objections*

A.N. next contends that the trial judge improperly placed A.N.'s counsel "in an awkwardly adversarial position with the court" regarding his objections to its questioning of K.G. (Appellant's Br. p. 10). She points to separate occasions where the trial court either expressly overruled or allegedly disregarded her hearsay objections. A.N. argues that by taking "on the role of calling K.G., questioning K.G., and assisting K.G. with the admission and presentation of evidence," the trial court "should at the very least also be required [to] meaningfully consider the other party's objections." (Appellant's Br. p. 12-13).

When A.N. objected to K.G.'s testimony on what A.N. said when he advised her that he had a protective order, the trial court expressly overruled it because A.N.'s statements were admissible as statements of a party-opponent. *See* Ind. Evid.R. 801(d)(2)(A). Later, it appears that the trial court affirmatively responded to A.N.'s two objections on K.G.'s testimony that A.N. informed the water company that he had moved, by changing tack and asking K.G. about his actions rather than what others said. On the third occasion, A.N.'s counsel objected on hearsay grounds, but the trial court overruled the objection "at this point." (Tr. p. 29). A.N. makes no argument on the propriety of the trial court's rulings. We are therefore unable to conclude that the trial court's conduct improperly placed her counsel in an adversarial position.

### C. *Sua Sponte Objections*

A.N. next contends that the trial court erred by *sua sponte* interposing objections on four different occasions during A.N.'s cross-examination of K.G. When A.N. cross-

11

examined K.G. on whether a particular telephone number from which he received harassing calls belonged to A.N., the trial court *sua sponte* ruled that A.N. had mischaracterized K.G.'s testimony. Thereafter, the trial court interposed three objections, stating that A.N.'s questioning was argumentative. A.N. argues that the trial court improperly acted as an advocate by objecting from the bench.

A trial court has a duty to remain impartial and refrain from making unnecessary comments or remarks. *Cook v. State*, 734 N.E.2d 563, 566 (Ind. 2000), *reh'g denied*. However, not all untoward remarks by a judge constitute reversible error. *Id*. at 567. The remarks must harm the complaining party or interfere with the right to a fair trial. *Id*. Further, the court does not engage in improper advocacy by stopping improper cross-examination on its own motion. *Id*.

The record reveals that each time the trial court interrupted A.N.'s cross-examination, the questions posed either mischaracterized K.G.'s testimony or were argumentative. However, the critical question here is whether the trial court's remarks harmed A.N. or denied her a fair trial. *See id*. They did not. In the first instance, A.N. simply rephrased the question and proceeded with cross-examination. After intervening in the three instances of argumentative questioning, the trial court sought to move the proceedings forward, for example, by instructing A.N.'s counsel to "stick with the facts of these contempt petitions." (Tr. pp. 55). Consequently, A.N. has not shown that the trial court's remarks constituted improper advocacy or interfered with her right to a fair trial. *See Cook*, 734 N.E.2d at 566.

12

## D. *Interrogation of Witnesses*

A.N. next contends that the trial court gave the appearance of partiality when it argued with A.N.'s counsel in response to an objection and questioned A.N. upon K.G.'s request.

> [TRIAL COURT]: Um, Mr. K.G., I just – there was some questions that [A.N.'s counsel] was asking you about um, the phone call having to do with your water being turned off.
>
> [K.G.]: Um-huh.
>
> [TRIAL COURT]: Um, and you indicated that you believe that [A.N.] was the individual that called the water company. And why is it that you believe that she had the information needed to call the water company?
>
> [K.G.]: Because she had stated before in court –
>
> [DEFENSE COUNSEL]: Uh, --
>
> [TRIAL COURT]: Go…uh, you asked the question. I'm trying to find out why he believes that –
>
> [K.G.]: She has stated in court that she has gotten ahold of my wife's total history. Her [s]ocial [s]ecurity number, everything. She has her identity, and she has used it.
>
> [DEFENSE COUNSEL]: Your Honor … I object to that. I think it's … it's just … for the purpose of being used for the truth of the matter asserted. I'm just saying that if that is what he's saying that she said in court, he should bring in some documentation that … [A.N.] … here it is. Um, I … wasn't present there. I don't have any information about the –
>
> [TRIAL COURT]: Yes, you were. You -- this was at the last hearing having to do with [R.R.]. And I remember the question um, that was asked by her attorney -- or his attorney – [R.R.] having to do with whether or not [A.N.] worked for some health service agency and whether she'd been fired. And she was fired because … if I remember her testimony correctly – and you can go back and check the record –

[DEFENSE COUNSEL]: Um-huh.

[TRIAL COURT]: -- if you choose -- her testimony uh, incorporated from that hearing into this one was that she had gotten -- uh, she had gone in and gotten [K.G.'s] wife's uh, information because she was afraid she was being stalked. And that –

[DEFENSE COUNSEL]: Um-huh.

[TRIAL COURT]: -- was her testimony at the time. Uh, so that was -- that was a question that was asked and answered at the last one -- uh, at the last hearing we had on the -- was that the 15th of this month?

(Tr. pp. 56-58). Later, the following colloquy ensued:

[TRIAL COURT]: [I]s there anything you want me to know before I make a decision?

[K.G.]: I just would like to ask [A.N.] one question. I have one question for her.

[TRIAL COURT]: Okay, Um, ma'am, you've been sworn. Um, would you ask me the question, and I will relay it.

[K.G.]: I would like for you to ask her that one phone, well, did it ever belong to her?

[TRIAL COURT]: All right. [T]he question for you is this number that's been - - uh, that's in this photograph that is [K.G.'s] Exhibit 1, did that [telephone] number ever belong to you?

[A.N.]: The [telephone number]?

[TRIAL COURT]: Right.

[A.N.]: No.

(Tr. pp. 63-64).

A.N. contends that the foregoing demonstrates the trial court's advocacy on behalf of K.G. We do not agree. The trial court may direct questions to a witness to aid in the

14

fact finding process as long as it is done in an impartial manner. *McManus v. State*, 433 N.E.2d 775, 777 (Ind. 1982). A.N. had testified at a prior hearing that, "I looked at the records of [T.B.], who used to be [K.G.'s] ex-wife to get her information 'cause she was calling me. Yes, I did and I was fired for it." (Suppl. Tr. 115). We find that the statement was not hearsay because it was "offered against a party and is (A) the party's own statement." Evid.R. 801(d)(2)(A). Rather, the record shows that the trial court was trying to understand the confused statements from K.G. regarding his accusations against A.N. and was not challenging any testimony or advocating a particular position.

As for the trial court's question to A.N., the trial judge's mere calling of those witnesses to the witness stand does not place the trial court in an adversarial role. *Roberts*, 723 N.E.2d at 476. Moreover, A.N. has not shown prejudice. Even if the trial court's questioning of A.N. was improper, the trial court found a violation of K.G.'s protective order based on his testimony about harassing phone calls that came from a particular telephone number and that he recognized A.N.'s voice when he picked up his home phone. Consequently, the trial court's judgment did not rely upon whether A.N. called the water company to shut his water off or whether A.N. owned the phone whose telephone number appeared on K.G.'s home phone caller identification display.

### E. *Closing Argument*

A.N.'s next allegation of trial court advocacy concerns its *sua sponte* objection during her closing argument. During closing argument, A.N.'s counsel stated:

> [DEFENSE COUNSEL]: […]. [K.G. has] never seen [A.N.] around his children, but he's saying today that she was around his children which I

15

believe should have been stricken from the record 'cause he's sayin' his kids told him that they [saw] [A.N.] around the neighborhood. Clearly, out-of-court statement … being used to prove the truth of the matter asserted that he was around the –

[TRIAL COURT]: Mr. –

[DEFENSE COUNSEL]: -- kids.

[TRIAL COURT]: -- […] don't use that argument because you were the one that asked him the question about that.

[DEFENSE COUNSEL]: Uh, actually … well, according … to my notes, Judge … I though the [c]ourt asked, you know, did the children live with the ex-wife. And um, then I did follow-up because he said … he didn't think [A.N.] knew where the kids lived and … he was told … that she was going around the kids but –

[TRIAL COURT]: And that was in response to your questions.

[DEFENSE COUNSEL]: Oh, okay. Um, well he did say he didn't know if she knew where the kids lived, and the kids are not here to testify to say that um, that she was around. And he brought in no proof that she was around his kids. No proof. No evidence whatsoever.

(Tr. pp. 65-66). The record reflects that during A.N.'s cross-examination of K.G., the following dialogue occurred:

[DEFENSE COUNSEL]: And did someone tell you that [A.N. was] driving around where you [sic] kids live?

[K.G.]: My kids have saw [sic] her.

[DEFENSE COUNSEL]: Okay. And are your kids here today?

(Tr. p. 44).

A trial court has wide discretion in determining the scope and conduct of final argument. *Allen v. State*, 456 N.E.2d 384, 386 (Ind. 1983). Absent an abuse of

16

discretion, the trial court's actions in controlling final argument will be sustained on appeal. *Id*. A court may take action which it deems necessary without waiting for an objection by opposing counsel. *Id*. Here, A.N. characterized evidence that he had previously procured during cross-examination as inadmissible hearsay. We do not conclude that the trial court's comments crossed the bounds of partiality or constituted advocacy on behalf of K.G.

## F. *Cumulative Error*

Finally, A.N. asserts that the actions of the trial court, even if individually insufficient to establish improper advocacy, require reversal based on their cumulative effect. Under some circumstances, the cumulative effect of trial errors may warrant reversal even if deemed harmless in isolation. *Hubbell v. State*, 754 N.E.2d 884, 895 (Ind. 2001). The record before us and the nature of the proceedings admittedly contains a number of irregularities and arguably improper conduct by the trial court. However, because the trial court did not err in each of circumstance alleged by A.N., we find no cumulative error and therefore conclude that A.N. was not denied a fair trial. As a result, A.N. has not shown fundamental error.[2]

---

[2] A.N. also challenges the 28-year extension of K.G.'s protective order. Specifically, A.N. argues that the duration of the extension is invalid under Ind. Code § 34-26-5-9(e), which provides a duration of two years, "unless another date is ordered by the court." A.N. urges us to remand for findings on the duration, reduce the duration to two years, or clarify whether the order is subject to judicial review. However, "a party may not present an argument or issue to an appellate court unless the party raised that argument or issue to the trial court." *GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC.* 764 N.E.2d 647, 651 (Ind. Ct. App. 2002). As A.N. did not make any argument on this issue below and has not alleged fundamental error, A.N. has waived this issue. Moreover, the record reveals that A.N. expressly agreed to an extension of the protective order and raised no objection after the trial court extended it to November 2040.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not improperly act as an advocate and therefore did not deny A.N. her due process right to a fair trial before an impartial tribunal.

Affirmed.

KIRSCH, J. concurs

ROBB, J. concurs with separate concurring opinion

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE PETITION | ) | |
| FOR TEMPORARY PROTECTIVE | ) | |
| ORDER: | ) | |
| | ) | |
| A.N., | ) | |
| | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1212-PO-649 |
| | ) | |
| K.G., | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

**ROBB, Chief Judge, concurring with opinion**

I believe the trial court was precariously close to crossing the line of acceptable intervention into the course of these proceedings. Had the evidence of A.N.'s impermissible contacts not been so strong, the trial court's actions may have been enough to compromise the parties' rights to a fair trial. However, because the evidence that A.N.

19

violated the protective order is overwhelming, I agree that the trial court's contempt order should be affirmed.