# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 20 2016, 8:29 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Daniel C. Reuter
Nashville, Indiana

Kurt A. Young
Nashville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| C.L. and J.L.,<br>*Appellants-Defendants,*<br><br>v.<br><br>Indiana Department of Child Services,<br>*Appellee-Plaintiff.* | April 20, 2016<br><br>Court of Appeals Case No.<br>07A04-1510-JC-1611<br><br>Appeal from the Brown Circuit Court<br><br>The Honorable Judith A. Stewart, Judge<br><br>Trial Court Cause No.<br>07C01-1505-JC-26, 07C01-1505-JC-27, 07C01-1505-JC-28 |

**Altice, Judge.**

## Case Summary

C.L. (Mother) and J.L. (Father) (collectively, Parents) appeal the trial court's determination that their children are Children in Need of Services (CHINS). Parents argue that the evidence was insufficient to support the CHINS adjudication.

We affirm.

## Facts & Procedural History

Parents are married and have three children, M.L., S.L., and H.L. (collectively, Children), who were born in 2003, 2005, and 2008, respectively. In 2010, Children were adjudicated CHINS and placed in foster care after law enforcement discovered an active methamphetamine lab on the same property where the family lived in a mobile home. Additionally, marijuana and drug paraphernalia were found inside the home, and Parents both tested positive for methamphetamine. As part of the dispositional order, Parents were ordered to participate in marriage counseling and drug treatment. The CHINS case closed in 2013 and Children were reunified with Parents.

On May 6, 2015, Parents, who at that time had been separated for about a month, were involved in a domestic violence incident. Father came to visit Mother at her mother's home, and they spoke in a car in the driveway while Children slept inside the house. Mother and Father got into a physical struggle over a cell phone, during which Mother sustained a bruise on her chest. At

some point, Father exited the car and Mother attempted to drive away, but Father jumped onto the hood of the car and tried to break the window. Mother drove away with Father still on the hood of the car, and Father fell off. Father's feet were seriously injured and he was admitted to the hospital for treatment. When he arrived at the hospital, Father was under the influence of meth and in possession of marijuana and a meth pipe.

[5] On May 11, 2015, the Brown County Department of Child Services (DCS) received a report concerning the May 6 domestic violence incident. On May 14, 2015, DCS received an additional report alleging that Parents were using methamphetamine and marijuana. The next day, Family Case Manager (FCM) Emily Bock met with Mother at her residence. Mother told FCM Bock that Children were present at her mother's house when the May 6 incident occurred. Mother denied being under the influence of drugs or alcohol at the time of the incident and stated that she had last used marijuana approximately nine months before. Mother told FCM Bock that Father had recently broken a window and kicked a door at their home. Mother stated that she would not be allowing Father to return to the residence upon his release from the hospital. Mother refused a drug screen and denied FCM Bock access to the residence on that date.

[6] FCM Bock returned to Mother's home on May 27, 2015. This time, Mother allowed FCM Bock access to the home, but she again refused a drug screen. FCM Bock informed Mother that DCS was restricting Father's contact with Children and that failure to cooperate would result in Children's removal from

the home. Mother told FCM Bock that she understood and that she did not know Father's whereabouts. FCM Bock could not locate Father, but she was able to get a message to him through family members about the initial hearing scheduled for May 28, 2015.

[7] Both Mother and Father appeared at the initial hearing. FCM Bock testified concerning her investigation up until that point, and the trial court granted DCS's request to file a CHINS petition with respect to Children. The trial court ordered that Children would remain in Mother's care at that time and have only supervised visitation with Father.

[8] On June 9, 2015, DCS decided to remove Children from the home after learning that Mother had, in violation of the trial court's order, allowed Father to move back into the home. When FCM Bock and her police escort arrived at the home to remove Children, Mother admitted that Father had moved back in so that they could work on their relationship. Mother also admitted that she was aware that Father was not to have contact with Children unless supervised by an individual approved by DCS. Mother and Father both refused drug screens, and Mother told FCM Bock to go ahead and take Children. Children were placed with their maternal aunt.

[9] On June 11, 2015, DCS filed an amended CHINS petition and a Report of Preliminary Inquiry. In the report, DCS indicated that Father had told FCM Bock that Mother had been violent toward him on multiple occasions in the past, and during the May 6 incident, she had ripped his shirt off and punched

him in the face twice, breaking his nose. Father also told FCM Bock that he smoked marijuana regularly, that he was high on meth when he was admitted to the hospital, and that he and Mother had used meth together on May 4 or 5, 2015. A detention hearing was held, at which Parents denied the allegations set forth in the CHINS petition. The trial court ordered Children's continued placement outside the home and ordered Parents to submit to random drug screens.

[10] A fact-finding hearing was held on July 1, 2015, at which Parents both testified. Mother admitted to knowingly violating the trial court's order by allowing Father to move back in and stated that she did so because Children were very upset and missing Father. Mother stated that she had used marijuana a few months ago, but had not used any other illegal drugs for years. Mother testified that she did not think there was anything wrong with smoking marijuana in the garage while Children were in the house playing, and that Children would not be impacted if she were arrested for using illegal drugs because she would just bond out. Mother admitted that she had not complied with the court order to submit to random drug screens because she did not think she should have been ordered to do so.

[11] At the fact-finding hearing, Father denied telling FCM Bock that Mother had punched him in the face and broken his nose on May 6. He also denied telling FCM Bock that he and Mother had used meth together or that he was high on meth and in possession of marijuana and a meth pipe when he was admitted to the hospital on May 6. Father admitted to using marijuana to cope with stress,

but stated it had been two or three months since his last use. He stated that he did not comply with the court order requiring him to participate in random drug screens because "[i]t's [his] right." *Transcript* at 101.

[12] FCM Bock testified that she had spoken to Parents about reunification services, and they had told her that they did not want to be involved with DCS and offered to give a family member temporary guardianship over Children. When FCM Bock explained that DCS would not consent to this arrangement because Children need permanency, Parents offered to voluntarily terminate their parental rights to Children. At the conclusion of the evidence, the trial court took the matter under advisement.

[13] On July 9, 2015, the trial court issued its order adjudicating Children CHINS. On September 8, 2015, the trial court issued its dispositional order requiring Parents to participate in reunification services. Parents now appeal. Additional facts will be provided as necessary.

## Discussion & Decision

[14] Where, as here, a juvenile court enters findings of fact and conclusions of law in support of its CHINS determination, we apply a two-tiered standard of review. *Parmeter v. Cass Cnty. Dep't of Child Servs.*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007). First, we consider whether the evidence supports the findings, and second, whether the findings support the judgment. *Id.* We will not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either

directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* While we defer to the juvenile court's findings of fact, we do not do so to its conclusions of law. *Id.* Additionally, we will not reweigh the evidence; rather, we consider the evidence favorable to the judgment and draw all reasonable inferences in favor of the judgment. *Id.*

[15] In this case, DCS alleged Children were CHINS pursuant to Ind. Code § 31-34-1-1, which provides that a child under eighteen years of age is a CHINS if:

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[16] "Because a CHINS proceeding is a civil action, the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). In reviewing the sufficiency of the evidence supporting a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *In re J.L.*, 919 N.E.2d 561, 563 (Ind. Ct. App. 2009).

[17]    In this case, the trial court determined that Children were CHINS because they were seriously endangered as a result of Parents' drug use and the domestic violence in their relationship. On appeal, Parents argue that the trial court's finding of endangerment is not supported by sufficient evidence because there is no indication that Parents ever used drugs or physically fought in the presence of Children. Parents argue further that there is no indication that Children had been impacted by or were even aware of any drug use or domestic violence.

[18]    We note, as did the trial court, that Children appear to be doing well. However, DCS need not wait until a child is actually harmed to intervene; rather, a child may be adjudicated a CHINS if his or her physical or mental condition is endangered. I.C. § 31-34-1-1; *K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015). This court has held that a parent's drug use while caring for a child can support a CHINS determination, even when the drug use does not occur in the child's presence. *In re J.L.*, 919 N.E.2d at 564. This is so because when a caregiver is under the influence of drugs, a child is "essentially abandoned . . . without any responsible supervision." *Id.* In this case, Children were previously adjudicated CHINS based on their exposure to Parents' illegal drug use, and Father told FCM Bock that he and Mother had used meth together on May 4 or 5, 2015. Father also told FCM Bock that he was high on meth when he was admitted to the hospital following the May 6 domestic violence incident. Furthermore, both Parents admitted to using marijuana, and Mother testified that there was nothing wrong with smoking marijuana in the garage while Children were inside the house playing.

According to Mother, Children would not be harmed if she were arrested because she would simply bond out. In light of these facts, we conclude that the trial court's finding that Children were seriously endangered by Parents' use of illegal drugs was supported by the evidence.

[19] With respect to the domestic violence between Mother and Father, we note that our Supreme Court has acknowledged that a child's exposure to domestic violence can support a CHINS finding. *In re N.E.*, 919 N.E.2d at 106; *see also In re S.W.*, 920 N.E.2d 783, 789-90 (Ind. Ct. App. 2010) (affirming CHINS finding based, in part, on child's statement that domestic violence had been occurring in the household). The trial court in this case acknowledged that there was no evidence that Children actually witnessed the violence between Mother and Father. However, the evidence presented at the fact-finding hearing supports a conclusion that domestic violence is an ongoing problem in Parents' marriage. In addition to the May 6 incident, which took place outside the house where Children were sleeping, Mother reported that Father had recently broken a window and kicked a door at the home. Father reported that Mother punched him in the face and broke his nose, and he further asserted that Mother had been violent toward him on multiple occasions in the past. Even if we accept Parents' assertions that Children never directly witnessed the violence, Children were nevertheless placed at risk due to the pattern of violence and volatility in Parents' relationship. Accordingly, the trial court's finding that Children were seriously endangered as a result of domestic violence is supported by the

evidence. Based on the foregoing, we conclude that the trial court properly found Children to be CHINS.

[20] Judgment affirmed.

[21] Bailey, J. and Bradford, J., concur.