# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Apr 04 2019, 6:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Danielle Sheff
Sheff Law Office
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Frances Barrow
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of:  J.H. (Child Alleged to be in Need of Services) and D.H. (Mother);

D.H. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

and

April 4, 2019

Court of Appeals Case No.
18A-JC-2417

Appeal from the Marion Superior Court

The Honorable Marilyn Moores, Judge
The Honorable Jennifer Hubartt, Magistrate

Trial Court Cause No.
49D09-1804-JC-1007

Child Advocates, Inc.,

*Appellee-Guardian ad Litem*

**May, Judge.**

[1] D.H. ("Mother") appeals the adjudication of her child, J.H. ("Child") as a Child in Need of Services ("CHINS"). She challenges several of the trial court's findings in its order adjudicating Child as a CHINS. She also contends the trial court improperly relied upon evidence of Mother's behavior during the Informal Adjustment to adjudicate Child as a CHINS. We affirm.

# Facts and Procedural History

[2] Mother gave birth to Child on September 14, 2017. Child tested positive for marijuana at birth and, based thereon, Mother entered into an Informal Adjustment Agreement ("IA") with DCS shortly after Child's birth. The IA allowed Mother to voluntarily participate in DCS services in an effort to avoid the adjudication of Child as a CHINS.

[3] On April 9, 2018, DCS filed a petition to adjudicate Child as a CHINS based on Mother's non-compliance during the IA. Specifically, DCS alleged Mother "ha[d] not participated in the recommended drug treatment, and she has not maintained contact with the Family Case Manager (FCM) and home based

case worker." (App. Vol. II at 19.) DCS also alleged Mother "tested positive for both cocaine and marijuana during the IA." (*Id.*)

[4] The trial court held the initial hearing on DCS's CHINS petition on April 9, 2018, and placed Child in relative care. The trial court ordered Mother to participate in random drug screens and engage in supervised visitation with Child. On August 1, 2018, the trial court held a fact-finding hearing on the petition to adjudicate Child a CHINS. On August 21, 2018, the trial court adjudicated Child a CHINS. The trial court found:

> 5. DCS offered mother an Informal Adjustment following the birth of the child. Mother agreed to the same and agreed to voluntarily complete services offered by DCS.
>
> 6. Mother admits that she did not complete the services which she voluntarily agreed to complete in the Informal Adjustment.
>
> 7. Mother admits that she used "weed" during the Informal Adjustment.
>
> * * * * *
>
> 10. FCM McCammack provided mother with services, including a substance abuse assessment and random drug screens, during the Informal Adjustment. Mother failed to cooperate with all services or follow through with the recommendations of the assessment.
>
> 11. FCM McCammack provided mother with safe sleep education during the Informal Adjustment because she was co-sleeping with the infant on an adult sized mattress on the floor.

12. Mother has a history of unstable housing and has lived in at least 5 different homes since October, 2017.

13. Mother told FCM McCammack on 7/30/18 that she was living in her prior residence and that she would move in with her Aunt when [Child] was returned to her care. Mother later told Mr. McCammack on 7/30/18 that she was, in fact, currently living with her Aunt.

14. Mother testified at the factfinding hearing held 8/1/18 that she was currently living with her Aunt.

15. Mother changed her testimony at the factfinding hearing held 8/1/18 and then testified that she was not yet living with her Aunt, but would begin living with her Aunt when [Child] was returned to her care.

16. Mother's testimony regarding her current housing and the stability of her housing for a very young child was not credible during the factfinding hearing held 8/1/18.

17. Since this action was filed, mother has been provided with random drug screens, parenting time, and home based case management.

18. Mother was offered home based case management because she lacked income and housing for the child at the commencement of the case.

19. Mother has supervised parenting time with her child.

20. Mother is employed at a print shop.

21. Mother does not have a clearly developed child care plan for [Child] while she is working.

22. Mother admits that she is benefitting from the services offered by DCS to help her get a job and become stable.

23. Mother does not believe that she continues to need the services offered by DCS.

24. Mother is a 20 year old single parent with limited income and resources to care for the Child.

25. Mother has not taken the initiative to independently access community based resources to secure housing, child care, or other concrete needs of the child.

26. Mother failed to voluntarily participate in services offered by DCS which could assist her securing housing, child care, and other concrete needs of the child during the Informal Adjustment, thereby necessitating the coercive intervention of the Court.

27. Mother minimizes the risks to [Child's] safety and well-being which are created by a lack of stable housing, child care, age appropriate bedding, and other concrete necessities needed by the child.

(App. Vol. II at 105-7) (errors in original). Based thereon, the trial court concluded:

2. The child's physical or mental condition is seriously impaired or endangered as a result of his mother's inability, refusal, and

neglect to provide the child with a safe, stable home environment.

3. The child needs a safe and stable home environment, parental care, and parental supervision which he is unlikely to receive without the coercive intervention of the Court.

(*Id*. at 107.)

The trial court held a dispositional hearing on August 29, 2018, and on September 12, 2018, the trial court entered a dispositional order requiring Mother to participate in services, including random home based visits and random drug screens.

# Discussion and Decision

Mother asserts DCS did not present sufficient evidence Child was a CHINS. A CHINS proceeding is civil in nature, so DCS must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). The CHINS petition was filed pursuant to Ind. Code § 31-34-1-1, which states:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food,

clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

[7] A CHINS adjudication "focuses on the condition of the child," and not the culpability of the parent. *In re N.E.,* 919 N.E.2d at 105. The purpose of finding a child to be a CHINS is to provide proper services for the benefit of the child, not to punish the parent. *Id.* at 106.

## Trial Court's Findings

[8] Mother challenges a number of the trial court's findings and their nexus to the trial court's decision to adjudicate Child a CHINS. When a juvenile court enters findings of fact and conclusions of law in a CHINS decision, we apply a two-tiered standard of review. *In re Des. B.,* 2 N.E.3d 828, 836 (Ind. Ct. App. 2014). We first consider whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We may not set aside the findings or judgment unless they are clearly erroneous. *Id.* Findings are clearly erroneous when the record contains no facts to support them either directly or by inference, and a judgment is clearly erroneous if it relies on an incorrect legal standard. *Id.* We give due regard to the juvenile court's ability to assess witness credibility and do not reweigh the evidence; we instead consider the

evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.* We defer substantially to findings of fact, but not to conclusions of law. *Id.* Unchallenged findings "must be accepted as correct." *Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1991).

[9] Mother first challenges Finding 16, wherein the trial court found: "Mother's testimony regarding her current housing and the stability of her housing for a very young child was not credible during the factfinding hearing held 8/1/18." (App. Vol. II at 106.) Mother argues at the August 1, 2018, hearing she testified she was living with her aunt and two other witnesses testified her housing was appropriate, and thus the trial court's finding is not supported by the evidence. However, Mother initially testified she had been living with her aunt for about a month, but later testimony from Mother and the home-based counselor provided conflicting information regarding the details of that housing, who lived in the house, and how long Mother intended to live there. Mother's argument is a request for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *In re Des. B.,* 2 N.E.3d at 836 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

[10] Mother next challenges Finding 22, which states: "Mother admits that she is benefitting from the services offered by DCS to help her get a job and become stable." (App. Vol. II at 106.) Mother contends the finding "misstates the evidence to indicate that [Mother] testified that she will continue to benefit from DCS services in the future." (Br. of Appellant at 19.) However, Mother testified she believed she needed the services provided as part of her IA "cause

[they] got [her] further than where [she] was." (Tr. Vol. II at 11) (errors in original). Mother's argument is a request for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re Des. B.,* 2 N.E.3d at 836 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

[11] Finally, Mother challenges Findings 25, 26, and 27, which state:

> 25. Mother has not taken the initiative to independently access community based resources to secure housing, child care, or other concrete needs of the child.

> 26. Mother failed to voluntarily participate in services offered by DCS which could assist her securing housing, child care, and other concrete needs of the child during the Informal Adjustment, thereby necessitating the coercive intervention of the Court.

> 27. Mother minimizes the risks to [Child's] safety and well-being which are created by a lack of stable housing, child care, age appropriate bedding, and other concrete necessities needed by the child.

(App. Vol. II at 106-7.) Mother argues the record is devoid of evidence Mother had not taken the initiative to access services on her own, that she had participated in services and drug screens during the IA, and that Mother had minimized the risks to Child of her current living and working situations.

[12] However, the record indicates Mother did not complete substance abuse treatment during the IA and did not think she needed substance abuse

treatment despite multiple positive drug screens during the IA. In addition, Mother testified she lived with her aunt for a month, though the trial court doubted the veracity of that statement. Mother also testified that she intended to look for her own apartment. DCS presented evidence that the family case manager observed Mother co-sleeping with Child on a mattress on the floor, prompting the family case manager to provide Mother with safe-sleeping education. There is no evidence Mother had taken into consideration that education and provided an appropriate sleeping environment for Child at the time of the fact-finding hearing; thus, Mother was not taking advantage of services without coercive intervention.

[13] Finally, Mother had maintained employment for a month and did not have a clearly developed childcare plan for Child once he was returned to her care. She indicated at the fact finding hearing that she expected her aunt to watch Child, and at the end of the fact finding hearing, the trial court ordered Mother to create "some concrete plans" for childcare. (Tr. Vol. II at 40.) Despite that request, a report submitted two weeks later indicated Mother had yet to devise such a plan. Mother's arguments are requests for us to reweigh the evidence and judge the credibility of witnesses, which we cannot do. *See In re Des. B.,* 2 N.E.3d at 836 (appellate court cannot reweigh evidence or judge the credibility of witnesses).

## Reliance on Evidence from Informal Adjustment

[14] Mother contends it was inappropriate for the trial court to rely on evidence of Mother's drug use and noncompliance with services during the IA, and she

argues we instead should focus on the fact she had been sober since the petitions for CHINS adjudication was filed. The facts of this case are similar to those in *K.B. v. Indiana Dept. of Child Services*, 24 N.E.3d 997 (Ind. Ct. App. 2015).

In *K.B.*, the father appealed a CHINS adjudication, arguing the behavior that prompted and occurred during the IA, specifically domestic violence between father and his girlfriend, had not occurred in the time since the CHINS petition was filed, and thus children were not CHINS. Like in the case before us, father consented to an IA with DCS, which required him to complete certain services and submit to random drug screens. Father's participation in the IA was "sporadic." *Id*. at 1001.

The trial court's order adjudicating father's children as CHINS noted the incidents of domestic violence between father and his girlfriend before and during the informal adjustment. Father argued the reliance on that past behavior was an error because there had not been an incident of domestic violence since DCS filed the CHINS petition. We disagreed, holding:

> Even if no other evidence of violence exists, we reiterate that the CHINS statute does not require the juvenile court and the DCS to wait until a child is physically or emotionally harmed to intervene. *See In re R.P.*, 949 N.E.2d [395, 401 (Ind. Ct. App. 2011)]. In addition, we note that although there were no further reported cases of violence when the trial court issued its CHINS finding, this by no means proves that Father's and Girlfriend's domestic violence problems had been resolved. Particularly, in light of the fact that Father and Girlfriend disregarded the provisions of their Informal Adjustment to participate in

> domestic violence counseling, there is no surety that the violence will not recur. Under these facts and circumstances, we conclude that the trial court's decision that the Children's physical or mental health was seriously endangered due to their exposure to the violence was not erroneous.

*Id*. at 1003-4.

[17] The same is true here. While Mother had not used drugs since DCS filed the CHINS petition, she tested positive for cocaine, marijuana, and amphetamines during the IA. In addition, she did not maintain regular contact with DCS during the IA, and she did not complete substance abuse treatment during the IA. As in *K.B.*, we have no surety whether Mother's substance abuse issues are resolved, especially in light of her failure to participate in services during the IA. *See id*. (while additional incidents of domestic violence did not occur after CHINS petition filed, father's failure to participate in services during the IA left the court unsure whether the violence would recur, thus requiring the intervention of the court). Based thereon, we hold the trial court did not err in considering the evidence of Mother's actions during the IA when determining if Child was a CHINS.

# Conclusion

[18] The evidence supported the trial court's findings, and those findings supported the trial court's conclusion that Child was a CHINS. Additionally, the trial court properly relied on evidence of Mother's pattern of behavior during the IA. Accordingly, we affirm.

Affirmed.

Baker, J., and Tavitas, J., concur.