# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 31 2020, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Lisa M. Johnson
Brownsburg, Indiana

Valerie K. Boots
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Katherine A. Cornelius
Deputy Attorneys General
Indianapolis, Indiana

DeDe Connor
Indianapolis, Indiana
for Child Advocates, Inc.

## IN THE
## COURT OF APPEALS OF INDIANA

In the Matter of D.A.I. and H.I., Children in Need of Services,

D.D.I., Father,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner,*

and

March 31, 2020

Court of Appeals Case No.
19A-JC-2235

Appeal from the
Marion Superior Court

The Honorable
Marilyn A. Moores, Judge
The Honorable Danielle Gaughan,
Judge Pro Tempore
The Honorable Marcia J. Ferree,
Magistrate

| Child Advocates, Inc., | Trial Court Cause Nos. |
| | 49D09-1901-JC-263 |
| *Appellee-Guardian Ad Litem*. | 49D09-1901-JC-264 |

**Kirsch, Judge.**

[1] D.D.I. ("Father") appeals from the juvenile court's order adjudicating D.A.I. and H.I. ("Children") to be children in need of services ("CHINS"). Father contends that the determination is clearly erroneous because the evidence does not show that their physical or mental condition is seriously impaired or endangered; that they need care, treatment, or rehabilitation that they are not receiving; or that the coercive intervention of the court is necessary to ensure their well-being.[1]

[2] We affirm.

---

[1] Mother of D.A.I. did not appear during the proceedings, was defaulted, and does not appeal; Mother of H.I. ("Mother") does not appeal the determination that H.I. is CHINS.

## Facts and Procedural History

[3] At about 5:00 a.m. on January 21, 2019, Indianapolis Metropolitan Police Department Officer Ryan Salisbury ("Officer Salisbury") was dispatched to the home of Father and A.J. ("Mother") (collectively, "Parents"), who is the mother of H.I., who was one year old at the time, but not D.A.I., who was five years old at the time. Mother told Office Salisbury that she and Father had argued over money. During the argument, Father held her down on a couch and pulled a sweater over her head, making it difficult for her to breathe because she was pregnant. She pulled Father's hair to get him to release her, and he slapped her face. D.A.I. and H.I. were both in the house at the time.

[4] D.A.I. was in an adjoining bedroom. H.I. was asleep in Parents' bedroom. When Officer Salisbury entered that room, he saw two handguns in a bag next to the bed; two loaded Glocks on a shelf in a closet, about four feet above the floor; and a shot gun, a rifle, and an AK-47, all unloaded, next to the bed. Officer Salisbury smelled marijuana and saw a glass jar, containing suspected marijuana, on the floor about three feet from the bed.

[5] Father was arrested. He was charged with: Count I, Domestic Battery Resulting in Bodily Injury to a Pregnant Woman, as a Level 5 felony; Count II, Strangulation, as a Level 5 felony; Count III: Criminal Confinement, as a Level 6 felony; Count IV, Domestic Battery, as a Level 6 felony; and Count V, Domestic Battery, as a Class A Misdemeanor. The Indiana Department of Child Services ("IDCS") placed the children with their paternal aunt because Mother was unable to care for the children, IDCS could not locate D.A.I.'s

mother, and Father was in jail on the charges resulting from this incident. Father's criminal case went to trial before the dispositional hearing in this case, but the jury was deadlocked; Father had not been retried at the time of the dispositional hearing.

[6]     On January 22, 2019 Family Case Manager Luke Proffitt ("FCM Proffitt") began to assess a report that Children were victims of abuse or neglect including domestic violence and illegal drug use in the home. When FCM Proffitt interviewed Father, he admitted to FCM Proffitt that he pushed Mother on the date of the incident but stated that he did not hit her. However, he admitted to past incidents of domestic violence. He also admitted there were weapons and ammunition in the room where H.I. was sleeping. On January 29, 2019, the IDCS filed a verified petition alleging Children were CHINS. IDCS alleged Children's physical or mental conditions were seriously impaired or endangered because Father failed to provide Children a home environment free from domestic violence, drug use, and unsafe placement of loaded weapons.

[7]     The juvenile court began hearing evidence on the CHINS petition on May 10, 2019 but continued the factfinding hearing due to the lateness of the hour. On May 13, 2019, the court heard evidence, but both Parents failed to appear although their respective counsels were present. D.A.I.'s mother failed to appear at any hearing. On May 17, 2019, the court held a default hearing regarding D.A.I.'s mother and took the default under advisement. On May 20, 2019, the court held another day of factfinding, at which Parents did not

appear.  On July 31, 2019, the juvenile court issued written findings of fact and conclusions of law and concluded that Children were CHINS, stating:

> The Child[ren]'s physical or mental condition is seriously impaired or endangered as a result of Parents' inability, refusal, and neglect to provide the Child[ren] with a safe and stable home environment that is free from domestic violence from unsafe and dangerous placement of guns in the home.
>
> Further, the Child[ren] need[] a safe and stable home environment and [they are] unlikely to receive this without the coercive intervention of the Court.

*Appellant's App. Vol. II* at 115, 219.  On August 23, 2019, the juvenile court held the disposition hearing, and Parents appeared in person and by counsel.  The juvenile court issued parental participation orders, ordering Parents to participate in services.  Father now appeals.

# Discussion and Decision

[8] CHINS proceedings are civil actions, and therefore, it must be proven by a preponderance of the evidence that a child is a CHINS as defined by statute.  *In re L.C.*, 23 N.E.3d 37, 39 (Ind. Ct. App. 2015), *trans. denied*.  This court neither reweighs the evidence nor judges the credibility of the witnesses.  *Id*.  We consider only the evidence that supports the juvenile court's decision and the reasonable inferences drawn therefrom.  *Id*. at 39-40.  Where the trial court issues findings of fact and conclusions thereon, we apply a two-tiered standard of review.  *In re R.P.*, 949 N.E.2d 395, 400 (Ind. Ct. App. 2011).  We consider first whether the evidence supports the findings and then whether the findings

support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id.* Findings are clearly erroneous only when the record contains no evidence to support them either directly or by inference. *K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997, 1001-02 (Ind. Ct. App. 2015).

[9] Father argues that the juvenile court erred when it found that Children were CHINS because there was not sufficient evidence to support such a determination. Father asserts that there was no evidence presented that Children's physical or mental condition was seriously impaired or endangered, or that they need care, treatment, or rehabilitation that they are not receiving. Furthermore, Father argues that DCS became involved because of illegal drugs, domestic violence, and unsecured firearms and ammunition and that at the time of the dispositional hearing, these issues had been resolved. He maintains that there is no evidence that he ever used illegal drugs, that even if there was domestic violence it is unlikely to re-occur because he is no longer living with Mother, and that he no longer has the firearms. Therefore, he contends that the coercive intervention of the court is not necessary to ensure Children's well-being.

[10] IDCS had the burden of proving by a preponderance of the evidence that Children were CHINS. Ind. Code § 31-34-12-3. Here, the juvenile court adjudicated Children to be CHINS pursuant to Indiana Code section 31-34-1-1, which provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Therefore, this statute requires "three basic elements: that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and . . . that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

[11] Here, the juvenile court based its determination on the presence of illegal drugs in the home, weapons and ammunition in the room where the H.I. was asleep on Parents' bed, and domestic violence while the children were in the home. The juvenile court found there was a domestic violence incident between Mother and Father on January 21, 2019, in which Father choked Mother until she could not breathe and left Mother with injuries to her face. *Appellant's App. Vol. II* at 217. These findings were supported by the testimony of Officer Salisbury and the admissions by Mother to FCM Proffitt. *Tr.* at 7, 14. Further,

Father admitted to FCM Proffitt he pushed Mother multiple times on January 21, 2019 and also admitted he and Mother had engaged in approximately four other violent fights since 2017. *Id.* at 16. Mother also admitted to FCM Proffitt there had been multiple violent incidents over the years. *Id.* at 14. This was sufficient evidence to support the finding about domestic violence. Father's argument that domestic violence is unlikely to reoccur because he is no longer living with Mother ignores the fact that they are parents to at least one of the Children. Therefore, even if they remain living apart, Parents will need to interact as the parents to a common child, and the domestic violence remains a threat to Children.

[12] Father contends that there is no evidence that he has a substance abuse or ever used illegal drugs and that it was Mother that used marijuana. The evidence presented at the hearing showed that Officer Salisbury testified he could smell marijuana coming from the bedroom even before he saw it. *Id.* at 8. The marijuana was found right next to the bed on the floor. *Id.* at 10. Mother admitted to regular and ongoing marijuana use, and she also admitted she witnessed Father selling drugs out of the home. *Id.* at 14, 17, 41, 42-43. The evidence showed that Father failed to protect Children from Mother's drug use and his own illegal conduct.

[13] Father stated that he no longer had the firearms at the time of dispositional hearing but conceded that they were taken from him when he was released from incarceration pending trial and placed on a monitoring system. The evidence presented at the hearing showed that Officer Salisbury found a

shotgun, a rifle and an AK-47 next to the bed where H.I. was sleeping, two handguns in a bag beside Parents' bed, and two Glock handguns on a four-foot-high shelf. *Id.* at 8-10. Although the guns next to the bed were unloaded, the two Glock handguns were loaded. *Id.* at 8-9. Although Father stated that he no longer had the guns at the time of the dispositional hearing, his additional statement that this was because he was on pretrial monitoring creates an inference that he could get the weapons back if he was no longer on the monitoring system.

[14] All of Father's arguments are a request to reweigh the evidence, which we do not do. *In re L.C.*, 23 N.E.3d at 39. We, therefore, conclude that the juvenile court did not err in finding the Children to be CHINS.

[15] Father also argues that he is capable of meeting all of the children's needs without the coercive intervention of the court. However, the juvenile court found the Children endangered from domestic violence, unsecured weapons storage, and Mother's mental health issues, which she treated through the use of illegal drugs. *Appellant's App. Vol. II* at 219. Parents both admitted the domestic violence issues had existed since October 2017, and there is no evidence either Parent took steps to obtain treatment or shield the Children during that time. *Tr.* at 14, 16. Concerning both the marijuana and the gun ownership, Father has not shown that he possesses the parenting skills to protect the Children. He allowed Mother to smoke marijuana in the home and left the marijuana within reach of Children. *Id.* at 10, 17, 41, 42-43. Further, there was evidence he was selling marijuana out of the house. *Id.* at 14. Father

clearly lacked an understanding of the risks of weapons in the hands of young children as both Children may have been able to reach a loaded gun stored four feet off the ground. *Id.* at 10. While Father stated that they tried to keep the Children out of their bedroom, on the night of Father's arrest, H.I. was sleeping in the same room. *Id.* at 16.

[16] The court need not wait until a tragedy occurs before intervening to protect Children. *In re R.P.*, 949 N.E.2d at 401. Father's violent and irresponsible actions endangered Children's physical and emotional safety. The juvenile court did not err in finding the coercive intervention of the court was needed to ensure the Children lived in a safe and stable home free from drug use, unsecured handguns, and domestic violence.

[17] Affirmed.

Bailey, J., and Mathias, J., concur.