## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 21 2016, 7:17 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy E. Stucky
Stucky, Lauer & Young, LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of E.J-H. & A.J-H. (Minor Children), Children in Need of Services,

and

G.J. (Mother),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

December 21, 2016

Court of Appeals Case No. 02A03-1607-JC-1633

Appeal from the Allen Superior Court

The Honorable Charles F. Pratt, Judge

The Honorable Sherry A. Hartzler, Magistrate

Trial Court Cause Nos. 02D08-1512-JC-633, -634

**Crone, Judge.**

# Case Summary

[1] G.J. ("Mother") appeals trial court orders adjudicating her two minor children, E.J-H. and A.J-H. (collectively "the Children"), as children in need of services ("CHINS"). She challenges the sufficiency of the evidence to support the CHINS determination. Concluding that the evidence is insufficient to support the CHINS determination, we reverse.

# Facts and Procedural History

[2] Mother and boyfriend E.M.H. ("Father") are the parents of E.J-H., born August 4, 2014, and A.J-H., born September 11, 2015. The couple had a tumultuous relationship that resulted in physical altercations in the presence of the Children. Father's criminal history included a felony domestic battery conviction (involving a female victim other than Mother) and misdemeanor convictions for resisting law enforcement and carrying a handgun without a license. He had one probation violation and had previously been the subject of a no-contact order in conjunction with a battery and strangulation charges involving another female victim.[1]

---

[1] The battery and strangulation charges were dismissed.

[3] On November 15, 2015, Mother drove to a gas station to confront Father about damage he had caused to her vehicle. An argument ensued in the parking lot, and Father struck Mother in the head, nose, eyes, jaw, and neck. Meanwhile, two-month-old A.J-H., who was sitting inside Mother's vehicle, was splattered with Mother's blood, which also left a trail on the pavement. Friends transported Mother to a nearby hospital, where she was treated for a concussion, abrasions, bruising to her eyes, jaw, and head, and a fractured nose. Her eyes were swollen shut, and she required stitches above her eyebrow. She relayed to emergency room personnel her fear of Father, and police were called.

[4] The Allen County Department of Child Services ("DCS") received a report concerning the incident, and on November 17, 2015, family case manager ("FCM") Louise Deitzer Hensley met with Mother and developed a safety plan for Mother and the Children. FCM Deitzer testified that she had attempted to locate Father to "get his side of the story" but that she had been unable to locate him. Tr. at 26. Mother and the Children were residing at the home of Mother's grandparents. Mother agreed to a safety plan, under which she would obtain protective orders prohibiting contact between Father and her and Father and the Children, pursue the filing of criminal charges against Father, and complete domestic violence counseling. FCM Deitzer testified that on December 10, 2015, Mother informed her that she would not be going forward with the safety plan. *Id.* at 32-33.

On January 11, 2016, the trial court found probable cause for a CHINS determination, and DCS filed a CHINS petition. Two weeks later, DCS filed an amended CHINS petition, alleging endangerment to the Children based on the parents' history of confrontation and physical altercations. The trial court issued a provisional order on February 3, 2016, in which it included provisional orders for services, including Mother's participation in and successful completion of domestic violence counseling through Phoenix Associates and obtaining protective orders ensuring no contact between Father and the Children. On March 23, 2016, Mother obtained a protective order for herself, and on April 6, 2016, she obtained protective orders for the Children. On April 7, 2016, Mother filed a motion to dismiss the CHINS petition. At the outset of the April 21, 2016 factfinding hearing, the trial court heard argument on Mother's motion to dismiss. It denied the motion and conducted a full factfinding hearing. At the time of the factfinding, Mother had participated in the domestic violence counseling but apparently had not completed it. FCM Cynthia Gardner, who handled Mother's case during the pendency of the CHINS petition, testified that although she would advise Mother to complete her counseling, she "would not have any concerns" if the services were discharged going forward. *Id*. at 58. Father failed to attend any of the CHINS hearings, and his whereabouts were unknown throughout the proceedings.

On June 14, 2016, the trial court issued an order with findings of fact and conclusions thereon, adjudicating the Children as CHINS.[2] Mother appeals the CHINS determination. Additional facts will be provided as necessary.

# Discussion and Decision

Mother challenges the sufficiency of the evidence to support the CHINS determination. When reviewing the sufficiency of evidence, we give due regard to the trial court's ability to assess the credibility of witnesses. *In re Des.B.*, 2 N.E.3d 828, 836 (Ind. Ct. App. 2014). We neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the trial court's decision. *K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Where the trial court issues findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.P.*, 949 N.E.2d 395, 400 (Ind. Ct. App. 2011). We consider first whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *K.B. v. Indiana Dep't of Child Servs.*, 24 N.E.3d 997, 1001-02 (Ind. Ct. App. 2015) (citation omitted). "A

---

[2] On July 11, 2016, the trial court issued a dispositional order. Mother has not included a copy of this order in her appendix.

judgment is clearly erroneous if it relies on an incorrect legal standard." *Id.* at 1002.

[8] In a CHINS proceeding, DCS bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). To meet its burden of establishing CHINS status, the State must prove that the child is under age eighteen,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1.

[9] Although the acts or omissions of one or both parents can cause a condition that creates the need for court intervention, the CHINS designation focuses on the condition of the child rather than on an act or omission of the parent(s). *N.E.*, 919 N.E.2d at 105. In other words, despite a "certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that – a determination that a child is in need of services." *Id.* (citations omitted).

[10] As part of the CHINS order, the trial court found, in pertinent part,

2. The Court finds that it is undisputed that Mother suffered a brutal attack on November 15, 201[5] at the hands of her boyfriend, Father, in which she was violently struck about the head, face and body resulting in contusions, a fractured nose, swollen eyes and a concussion.

….

4. The Court finds that immediately preceding the attack, Mother had driven with A.J-H. to a gas station to confront Father about damage to her car. The Court finds that during the course of the confrontation Mother pushed Father who proceeded to brutally attack Mother at the gas station.

5. The Court finds that it is also undisputed that on November 15, 2015, this brutal attack occurred in the presence of A.J-H., who was spattered with Mother's blood during the course of the attack.

6. From the testimony of DCS FCM Deitzer, the Court finds that during the course of the investigation, Mother was offered multiple services to ensure the safety of Mother and the Children. These services included victim[']s assistance services, victim[']s services through the Center for Non Violence, and other community resources to address domestic violence. Further, Mother entered into a safety plan in which she agreed to obtain a Protective Order.

7. From the testimony of DCS FCM Deitzer, the Court finds that by December 10, 2015 Mother reported she was no longer willing to obtain a protective order. Additionally, Mother was not readily responding to investigative inquiries from DCS to ensure Mother's compliance with the safety plan.

8. DCS continued to attempt to secure supportive and protective services for Mother in an attempt to avoid the coercive intervention of the Court. However, by January 2016 DCS

concluded that Mother was minimizing the threat to her safety and the Children's safety. DCS further concluded that Mother had violated the safety plan by failing to obtain a Protective Order as previously agreed.

9. Given DCS's assessment that Mother had not taken steps to ensure her safety and the safety of the Children, DCS initiated Court proceedings and requested a finding of probable cause that the Children were CHINS.

10. The Court finds that despite the finding of probable cause and the intervention of these proceedings, Mother failed to file Petitions for Orders of Protection until March 23, 2016 for herself, and April 6, 2016 for the Children. The Court would further note that Mother had not taken these steps for over a month after this matter was scheduled for trial. The Court finds that this demonstrates Mother[']s lack of insight and her willingness to take appropriate measures to ensure the safety and protection of herself and the Children.

11. The Court finds that Mother continued to demonstrate a lack of insight by failing to take advantage of and enroll in counseling until after the initiation of these court proceedings.

12. The Court further notes that from the time of the attack on November 15, 2015 up to the date of the trial, Father had not been apprehended by law enforcement and his whereabouts were unknown. Therefore, his access to Mother and the Children was without limitation until the legal prohibition obtained by the issuance of the protective orders well over three months after the attack.

13. The Court finds that since Mother has engaged in weekly counseling with Phoenix and Associates to address the domestic violence, she has been compliant with services and all Orders of the Court. The Court finds that at the time of these proceedings,

Mother had not completed her counseling with Phoenix and Associates.

Appellant's App. at 57-58.

[11] Pursuant to the CHINS statute, DCS had the burden of establishing that the Children were seriously endangered as a result of Mother's inability or refusal to supply them with necessary "food, clothing, shelter, medical care, education, or supervision" and that such care or treatment is "unlikely without the coercive intervention of the court." Ind. Code § 31-34-1-1. The undisputed evidence shows that the Children were well cared for in their great grandparents' home by both Mother and the great grandparents. As for supervision and measures to ensure their safety, it is undisputed that Mother obtained protective orders for herself and the Children weeks before the factfinding hearing. Appellant's App. at 49, 51, 53. DCS characterizes Mother as wavering in her resolve to protect the Children and address her own issues as a victim of domestic violence. While we agree with DCS that Mother was less than diligent in obtaining the protective orders, she nevertheless did so before the factfinding, thereby rendering the coercive intervention of the court unnecessary. *See In re S.D.*, 2 N.E.3d 1283, 1288-89 (Ind. 2014) (evidence held insufficient to support CHINS determination despite some evidence of mother's initial reticence to comply with services and lack of diligence in attending to child's medical needs).

[12] As for Mother's efforts to address her issues as a domestic violence victim, the undisputed evidence shows that she participated in domestic violence

counseling at Phoenix Associates. Although she apparently had not completed her counseling as of the date of the factfinding, FCM Garner testified that she "would not have any concerns" even if the counseling services were discharged without Mother having completed them. Tr. at 58.

[13] Simply put, Mother took the legal steps necessary to prevent Father from endangering the Children and took steps to address her issues as a victim of domestic violence. There is no evidence that Mother engaged in conduct that would otherwise jeopardize the Children's safety while they were in her care and residing at her grandparents' home. During the pendency of the CHINS proceedings, Father's whereabouts were unknown, and the record is devoid of evidence indicating that he attempted to contact Mother or the Children between November 2015 and the date of the factfinding. In short, there was no evidence of any ongoing threat from which Mother had failed to protect the Children. Based on the foregoing, we conclude that the evidence is insufficient to support the CHINS determination. Consequently, we reverse and vacate the CHINS determination.

[14] Reversed.

Riley, J., and Altice, J., concur.