## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT

Steven Knecht
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of D.T.T. | January 13, 2017 |
| A Child Alleged to be in Need of Services | Court of Appeals Case No. 79A02-1605-JC-1147 |
| | Appeal from the Tippecanoe Superior Court |
| M.T., | The Honorable Faith A. Graham, Judge |
| *Appellant-Respondent,* | The Honorable Tricia L. Thompson, Magistrate |
| v. | Trial Court Cause No. 79D03-1601-JC-27 |
| Indiana Department of Child Services, | |
| *Appellee-Petitioner.* | |

**Altice, Judge.**

## Case Summary

D.T.T. (Child) was adjudicated a Child in Need of Services (CHINS) by the Tippecanoe Superior Court. M.T. (Father) appeals, arguing that the Department of Child Services (DCS) did not present sufficient evidence to support the trial court's determination.

We affirm.

## Facts & Procedural History

Child was born on May 5, 2007, to A.C. (Mother)[1] and Father. In December 2015, Mother and Father were separated and Father had custody of Child. On December 13, 2015, police responded to Father's home because of an alleged domestic dispute between Father and Mother. Child was present in the home when the altercation occurred. Officer Jason Huber of the Tippecanoe County Sheriff's Department was the second officer to arrive and spoke with Mother, who was at the end of the driveway. Officer Huber noted that Mother was "[e]xtremely upset" and crying and that she had redness, swelling, and abrasions around her neck. *Transcript* at 7. Mother told Officer Huber that Father had shoved her head and neck into a car door. While Mother was talking to Officer Huber, Child came around the side of the house and ran to

---

[1] Mother does not participate in this appeal.

Mother. Officer Huber described Child as being "panicked and fearful." *Id.* at 8. Father was ultimately arrested for domestic battery and Mother was transported to the hospital by ambulance given her complaint of severe head pain. On December 22, 2015, Mother sought and obtained a protective order in which both she and Child were identified as protected persons. Mother sought to have the protective order amended on January 19, 2016, in order for Father to have access to Child.

[4] On January 22, 2016, DCS intervened upon learning that Mother and Child were living in Father's home in violation of the protective order. Child was placed with his paternal uncle in Hamilton County. DCS filed a CHINS petition on January 25, 2016. In the CHINS petition, DCS alleged that "parents have a history of domestic violence" and noted that they were involved in a previous CHINS action that was closed in October 2015. *Appellant's Appendix Vol. II* at 12. DCS further noted the December 2015 domestic violence incident and subsequent protective order, which Father and Mother violated. At an initial hearing held on February 2, 2016, Mother and Father both denied the allegations in the CHINS petition.

[5] A fact-finding hearing on the CHINS petition was held on March 4 and April 8, 2016. At both hearings, Father requested that Child be returned to his custody, but the court denied both requests. On April 25, 2016, the trial court determined Child to be a CHINS. A CHINS dispositional order and parental participation decree were issued on April 28, 2016. Father filed his notice of appeal on May 19, 2016. Additional facts will be provided as necessary.

## Discussion & Decision

[6] Father argues that the court's CHINS determination is not supported by the evidence. When determining whether sufficient evidence exists in support of a CHINS determination, we consider only the evidence most favorable to the judgment and the reasonable inferences therefrom. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). This court will not reweigh the evidence or reassess the credibility of the witnesses. *Id*. at 1286. When a juvenile court's order contains specific findings of fact and conclusions thereon, we engage in a two-tiered review. *In re A.G.*, 6 N.E.3d 952, 957 (Ind. Ct. App. 2014) (citing *In re T.S.*, 906 N.E.2d 801, 804 (Ind. 2009)). First, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment. *Id*. Findings are clearly erroneous when there are no facts or inferences drawn therefrom that support them. *Id*. A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the resulting judgment. *Id*.

[7] CHINS proceedings are civil actions, and therefore, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id*. We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id*. We reverse only upon a showing that the decision of the juvenile court was clearly erroneous. *Id*.

To meet its burden of establishing CHINS status, DCS must prove that the child is under eighteen years of age,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1.  Although the acts or omissions of one or both parents can cause a condition that creates the need for court intervention, the CHINS designation focuses on the condition of the child rather than on an act or omission of the parents.  *In re N.E.*, 919 N.E.2d at 105.  "[T]he purpose of a CHINS adjudication is to protect children, not punish parents."  *N.L. v. Ind. Dep't of Child Servs*, 919 N.E.2d 102, 106 (Ind. 2010).

In its order finding Child to be a CHINS, the court made the following findings:

> 2.  [Child] was previously found to be a Child in Need of Services (CHINS) on January 8, 2015.
>
> 3.  In that case, the Court found that parents have an extensive history of domestic violence with both parents becoming violent at times while [Child] was present.  [Child] was able to recount

details of incidents to the DCS investigator which Mother admitted were true.

4. Prior to that CHINS case, parents had separated but continued to have tumultuous interactions with each other. Despite the history of violence between them, Mother discussed reuniting with Father during the investigation.

5. The Court also found that Mother had been testing positive for marijuana and had issues with abusing her prescription pain medications.

* * *

7. The first CHINS case ended with [Child] in Father's custody and Mother having supervised parenting time.

8. On December 13, 2015, officers were called to Father's residence in Tippecanoe County. Mother was present and Lieutenant Jason Huber of the Tippecanoe County Sheriff's Department interviewed her. Mother was extremely emotional and crying. Mother complained of severe head pain and Lt. Huber observed injury to Mother's neck. Mother requested an ambulance. Mother told Lt. Huber that Father strangled her and shut her neck in the car door.

9. Lt. Huber observed [Child] run from the side of the house to Mother. [Child] was visibly upset.

10. Father was arrested and Mother was transported to the hospital. [Child] stayed with a family friend.

11. DCS Investigator Kuhn interviewed Mother several days later and Mother said that Father picked her up and threw her out and slammed her head in the car door.

12. Mother obtained a protective order against Father on December 21, 2015. Mother's petition for protective order indicates that Father attempted to strangle her and smashed her head in the car door. Mother stated that [Child] witnessed Father throw Mother out the door. Mother claimed that Father has battered her since [Child] was born.

13. [Child] was removed from parents' care on January 22, 2016 when DCS was informed that Mother and [Child] were living with Father.

14. Mother later changed her story about what happened to DCS investigator Kuhn. Mother also requested that the protective order be dismissed. Mother testified that she wanted the protective order dismissed because Father was no threat to her.

15. Mother had been obtaining prescription pills from her doctor since the end of the first CHINS case. Mother admitted she takes more pills than prescribed then gets pills from someone else after she runs out of her prescription. Mother admitted that she has been struggling with her pain pill addiction since she was thirteen years old.

16. On the second day of the fact finding hearing, Mother appeared in custody. Mother had been arrested in Tippecanoe County for a misdemeanor offense and was also being held for a White County case for Driving While Suspended. Mother is on probation for battery of Father's female friend.

17. [Child] is less than eighteen (18) years of age.

18. [Child's] physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of his parents to supply him with necessary food, clothing, shelter, medical care, education, or supervision. [Child] has been repeatedly exposed to domestic violence and a pattern of volatility in parents' relationship. Additionally, Mother continues to struggle with substance abuse addiction.

19. [Child] needs care or treatment that he is not receiving.

20. Parents are unlikely to provide the necessary care and treatment for [Child] without the coercive intervention of the court. Neither parent seems to understand the significant negative impact that their ongoing volatile relationship has on [Child].

21. Parents received services in the first CHINS case to address domestic violence and substance abuse issues. Those same issues are still present in this family and services continue to be needed. Parents have not sought services on their own.

[10] *Appellant's Appendix Vol. II* at 63-64. Father does not challenge the court's factual findings. Rather, Father argues that those findings do not support the court's conclusion that Child's condition was seriously impaired or endangered or that Child was deprived of any of the necessities required by I.C. § 31-34-1-1. Specifically, Father asserts that exposure to domestic violence is not sufficient to support a CHINS determination.

[11] In support of his argument, Father disagrees with prior holdings that exposure to domestic violence can support a CHINS finding. *See N.E.*, 919 N.E.2d at 106; *K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015).

Father asserts that the CHINS statute should be strictly construed against the State and notes that the statute does not set forth domestic violence as a ground upon which to base a CHINS determination. However, as noted by the court in *K.B.*, "the CHINS statute does not require the juvenile court and DCS to wait until a child is physically or emotionally harmed to intervene; rather, a child may be determined to be a CHINS if his or her physical or mental condition is endangered." 24 N.E.3d at 1003 (citing *In re R.P.*, 949 N.E.2d 395, 401 (Ind. Ct. App. 2011)).

[12] Here, as in *K.B.*, Child was of an age at which he was old enough to comprehend the violence between Mother and Father. An officer who responded to the December 2015 domestic disturbance call noted that Child came running from the side of the house to Mother and that Child appeared "panicked and fearful." *Transcript* at 8. Child reported to a DCS worker that the December 2015 incident was not the first time he had witnessed a physical altercation between Mother and Father and that it "scares" him when Mother and Father fight. *Appellant's Appendix Vol. II* at 16. Moreover, it was reported to DCS that Child was physically injured when he was "scratched on the neck" during the December 2015 incident. *Id*. at 14.

[13] Further, DCS had closed a prior CHINS proceeding, which was based in part on domestic violence in Child's presence, only two months prior to the December 2015 incidence between Mother and Father. Although Mother initially sought a protective order in the weeks leading up to this case, she ignored the protective order within a matter of weeks when she began living

with Father again. Our review of the record leads us to conclude that the evidence supports the court's findings, and the findings support the court's CHINS determination.

[14] Judgment affirmed.

[15] Riley, J. and Crone, J., concur.