## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Oct 04 2017, 7:55 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of M.C. and D.M. (Minor Children), Children in Need of Services, and P.C. (Mother), *Appellant-Respondent,* v. Indiana Department of Child Services, *Appellee-Petitioner* | October 4, 2017 Court of Appeals Case No. 49A02-1704-JC-753 Appeal from the Marion Superior Court The Honorable Marilyn A. Moores, Judge Honorable Diana J. Burleson, Magistrate Trial Court Cause Nos. 49D09-1608-JC-3239, - 3240 |

**Crone, Judge.**

## Case Summary

P.C. ("Mother") appeals a trial court order adjudicating her children, M.C. and D.M. (collectively "the Children"), as children in need of services ("CHINS"). She asserts that the trial court abused its discretion in considering evidence of her current substance abuse issues and improperly took judicial notice of her previous criminal cases. She also challenges the sufficiency of the evidence to support the CHINS determination. We affirm.

## Facts and Procedural History

Mother was involved with the Department of Child Services ("DCS") of Vigo County from 2008 through 2013. She voluntarily terminated her parental rights to three of her children, had her parental rights to her fourth child involuntarily terminated, and then voluntarily terminated her parental rights to her fifth child. In November 2013, she gave birth to M.C. In March 2014, Marion County DCS filed a CHINS petition concerning M.C., due largely to Mother's continued use of illegal drugs. Mother admitted to the allegations in the CHINS petition and participated in ordered services, and the case was closed successfully on July 1, 2015. Meanwhile, Mother had given birth to D.M. in March 2015.

In August 2016, acting on a report of suspected drug activity and prostitution at Mother's home, DCS initiated proceedings to have the Children adjudicated as CHINS. The CHINS petition cited Mother's substance abuse issues, extensive

history with DCS, and pending criminal charges in Hamilton County. Mother failed to appear for an initial hearing, and the Children were ordered removed from her care. For approximately one week, the Children's whereabouts were unknown. On September 6, 2016, DCS located them at Mother's home and removed them from her care.

[4] Mother tested positive for methamphetamine ("meth") and marijuana on September 21, 2016. At the pretrial hearing the following week, the court ordered her to take a drug screen, and she refused. She tested positive for meth on October 28, 2016.

[5] In November 2016, police conducted a raid at Mother's home. Mother's neighbor and block captain Doris Alderman observed eleven people handcuffed in Mother's yard, and Mother was arrested. She appeared for the CHINS factfinding on November 30, 2016, and tested positive for THC.[1] Mother's DCS family case manager ("FCM") testified concerning Mother's instability and "extensive history" with DCS and recommended supervised visitation, a substance abuse assessment, therapy, and random drug screens. *Id*. at 30. Mother's drug screen services were suspended due to noncooperation.

[6] On February 28, 2017, the trial court issued an order with findings of fact and conclusions thereon, adjudicating the Children as CHINS. In its findings, the trial court cited Mother's extensive history with DCS, her criminal history, her

---

[1] THC is the active ingredient in marijuana.

continued drug use and positive screens, and criminal activity occurring at her home. Following a March 2017 CHINS disposition hearing, the court ordered that the Children remain in foster care and that Mother participate in services.

Mother now appeals.[2] Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – The trial court acted within its discretion in admitting evidence of Mother's current substance abuse issues.

Mother challenges the trial court's admission of evidence concerning her current use of illegal drugs. We review a trial court's admission or exclusion of evidence for an abuse of discretion. *In re. Des.B.*, 2 N.E.3d 828, 834 (Ind. Ct. App. 2014). A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it and affects the substantial rights of a party. *Id*. Mother asserts that she lacked sufficient notice that her current drug use would be introduced in the CHINS proceedings. Although she does not characterize her argument as a due process claim, we note that due process protections are vital at all stages of CHINS proceedings because every CHINS proceeding has the potential to interfere with a parent's right to raise his or her children. *In re L.C.*, 23 N.E.3d 37, 40 (Ind. Ct. App. 2015), *trans. denied*. This ultimately means that the parent in

---

[2] The Children's fathers are not participating in this appeal.

CHINS proceedings must be provided "the opportunity to be heard at a meaningful time and in a meaningful manner." *Id*. (quoting *In re G.P.*, 4 N.E.3d 1158, 1166 (Ind. 2014)).

[9] Here, the CHINS petition included the following allegations pertaining to Mother's drug use:[3]

> d. Mother has a history of illegal drug use, specifically marijuana and methamphetamine.
>
> e. M.C. was removed from Mother's care by the DCS in 2014 due to being born drug exposed.
>
> f. Mother was recently charged in June 2016 for possession of a syringe and possession of a controlled substance.
>
> g. Mother refused to submit to a drug screen [].

Appellant's App. Vol. 2 at 42.

[10] On the third day of the factfinding hearing, Mother objected to witness testimony concerning her recent positive drug screens. In overruling her objection, the trial court noted that Mother had failed to object earlier when similar evidence was introduced. We also note that DCS requested and was granted permission to amend the pleadings to conform to the evidence pursuant to Indiana Trial Rule 15(B). Mother has not challenged the trial court's ruling

---

[3] To the extent that various petitions and orders identify Mother and the Children by name, we identify them as previously indicated in this decision.

in her brief on appeal; as such, the issue is not reviewable. *See Jeffrey v. Methodist Hosps.*, 956 N.E.2d 151, 158 n.9 (Ind. Ct. App. 2011) (failure to raise grounds for error in argument section of appellant's brief operates as waiver under Appellate Rule 46(A)(8)). In short, the CHINS petition allegations and unchallenged evidence were sufficient to place Mother on notice that her past and current drug use would be issues in the CHINS proceedings. As such, the trial court acted within its discretion in considering the evidence concerning Mother's current drug use.

## Section 2 – The trial court acted within its discretion in taking judicial notice of records in criminal cases involving Mother.

[11] In a closely related argument, Mother maintains that the trial court abused its discretion in taking judicial notice of the records in criminal cases against her. Before 2010, the general rule was that an Indiana trial court was not permitted to take judicial notice even of its own records in cases on related matters with related parties. *In re D.K.*, 968 N.E.2d 792, 796 (Ind. Ct. App. 2012). However, in 2010, Indiana Evidence Rule 201 was amended to permit a court to judicially notice the existence of "records of a court of this state." Ind. Evidence Rule 201(a)(2)(C). The challenged records involve charges against Mother for substance abuse offenses, and Mother's substance abuse was an important and related issue in the CHINS determination. She observes that judicial notice extends only to the existence of those cases, not to the facts therein. Nevertheless, we note that her point of contention concerns her criminal charge for possession of a syringe and the fact that she is a diabetic with a lawful

reason to possess a syringe. In its order following the pretrial hearing, the trial court indicated that it took into consideration that Mother's criminal charge would be (but had not yet been) dismissed due to her status as a diabetic. Appellant's App. Vol. 2 at 87. Mother has failed to establish an abuse of discretion affecting her substantial rights. The trial court acted within its discretion in taking judicial notice of Mother's criminal cases.

## Section 3 – The evidence is sufficient to support the CHINS determination.

Mother also challenges the sufficiency of the evidence to support the CHINS determination. When reviewing the sufficiency of evidence, we give due regard to the trial court's ability to assess the credibility of witnesses. *Des.B.*, 2 N.E.3d at 836. We neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the trial court's decision. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Where the trial court issues findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.P.*, 949 N.E.2d 395, 400 (Ind. Ct. App. 2011). We consider first whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id.* "Findings are clearly erroneous only when the record contains no evidence to support them either directly or by inference." *K.B. v. Ind. Dep't of Child Servs.*, 24 N.E.3d 997,

1001-02 (Ind. Ct. App. 2015) (citation omitted). "A judgment is clearly erroneous if it relies on an incorrect legal standard." *Id*. at 1002.

[2] In a CHINS proceeding, DCS bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). To meet its burden of establishing CHINS status, the State must prove that the child is under age eighteen,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> > (A) the child is not receiving; and
> >
> > (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1.

[3] Although the acts or omissions of one or both parents can cause a condition that creates the need for court intervention, the CHINS designation focuses on the condition of the child rather than on an act or omission of the parent(s). *N.E.*, 919 N.E.2d at 105. In other words, despite a "certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that – a determination that a child is in need of services." *Id*. (citations omitted).

[4]     Mother admits to her history of drug abuse but maintains that DCS failed to establish that the Children were seriously endangered or impaired as a result of her alleged inability to provide necessary care and supervision without the court's coercive intervention. She claims that the trial court improperly based its decision on her past drug use and relies on cases in which other panels of this Court found the evidence of endangerment insufficient to support a CHINS determination. *See In re S.K.*, 57 N.E.3d 878, 883 (Ind. Ct. App. 2016) (mother and boyfriend's positive test for amphetamine and meth on day when they were children's sole caregivers not of itself sufficient to establish serious endangerment); *see also In re S.M.*, 45 N.E.3d 1252, 1256-57 (Ind. Ct. App. 2015) (where child's meconium tested positive for marijuana at birth and where all mother's drug screens during CHINS pendency were clean, Court held that a *history* – whether of substance abuse, DCS contacts, or crimes – is not itself sufficient to establish serious endangerment).

[5]     The *S.K.* and *S.M.* courts emphasized that a finding of serious endangerment cannot be based solely on *previous* drug use or criminal activity – whether isolated or habitual. In contrast, here, Mother failed drug screens during the pendency of the CHINS proceedings. Moreover, the evidence of regular, illicit activity taking place on Mother's property concerned the time period *after* the previous CHINS case had closed and during the pendency of the present CHINS case. For example, neighbor Alderman reported that she observed a police raid at Mother's home in which eleven people, including Mother, were handcuffed and placed in a "paddy wagon." Tr. Vol. 2 at 16. As a block

captain, Alderman had worked with drug task force officers to recognize signs of suspicious activities and simply testified that she regularly observed what she perceived to be drug use, needle sharing, and prostitution occurring outside Mother's house, in her yard, and in vehicles parked outside Mother's home and in front of her own home. *Id*. at 15-16, 19; *see*, *e.g.*, *Id*. at 20-21 (Alderman's description of seeing money exchanged for oral sex in vehicle with dome light illuminated in front of house). To the extent that Mother asks us to discount Alderman's testimony because she lacked formal training in detecting drug activity, we note that Alderman was cross-examined on this subject, and we remind Mother that we may not reweigh evidence or reassess witness credibility.[4] Alderman also recounted a specific incident prior to the Children's removal where D.M. was in a stroller on the porch with Mother and a man, and the two adults were sticking a needle in Mother's leg, the stroller "tumbled down the stairs" with D.M. in it. *Id*. at 14. Alderman also testified, without objection, that she would not allow her own child to go near Mother's house "because it's not safe for any child." *Id*. at 17. Mother's drug use and criminal activities were present, not previous, activities from which the trial court could reasonably draw an inference of serious endangerment to the Children.

---

[4] At one point early in Alderman's testimony, she referenced seeing "deliveries" and "drug usage." Tr. Vol. 2 at 14. Mother objected on the basis that Alderman was "not qualified to speak on that," "was not inside the house," and "does not know the people who have come and gone." *Id*. The trial court "sustain[ed] the objection for now" but left it open for Alderman to testify "if she's got any more information or background." *Id*. at 15. Alderman testified at length and was cross-examined concerning the extent of her informal training on recognizing suspicious activity in the neighborhood.

[6] Mother also cites her successful completion of the previous CHINS case involving M.C. as evidence that she has improved her lifestyle and no longer needs court intervention. However, she admitted to DCS workers that she had used marijuana and methamphetamine for an extended time, stopped for a while, and resumed her drug use in 2016 when D.M. turned one. *Id.* at 28. The very fact that Mother resumed her drug use shortly after she had ceased being under the coercive intervention of the previous CHINS court undercuts her argument that she does not now need that same type of coercive intervention to help her get clean. Even after the trial court intervened and ordered the Children's removal, Mother was uncooperative and pretended not to be home on several occasions when DCS came to her door. One of those times, she took the Children and drove away.

[7] In sum, the evidence of Mother's current drug use, noncooperation, and criminal activity is sufficient to support a finding of serious endangerment to the Children stemming from her inability or unwillingness to make and sustain necessary changes in her lifestyle without court intervention. Mother has failed to demonstrate clear error in the trial court's adjudication of the Children as CHINS. Accordingly, we affirm.

[8] Affirmed.

Vaidik, C.J., and Mathias, J., concur.