## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 29 2018, 6:52 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Karen E. Wrenbeck
Monroe County Public Defender's Office
Bloomington, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of R.F. (a Child in Need of Services) | November 29, 2018 |
| | Court of Appeals Case No. 18A-JC-1394 |
| Z.F. (Father),<br>*Appellant-Respondent,* | Appeal from the Monroe Circuit Court |
| v. | The Honorable Stephen R. Galvin, Judge |
| The Indiana Department of Child Services,<br>*Appellee-Petitioner.* | Trial Court Cause No. 53C07-1710-JC-822 |

**Bailey, Judge.**

# Case Summary

Following fact-finding and dispositional hearings and orders, Z.F. ("Father") appeals[1] the trial court's order adjudicating his child, R.F. ("Child"), to be a Child in Need of Services ("CHINS"). He raises one issue on appeal: whether there was sufficient evidence to support the determination that Child is a CHINS.

We affirm.

# Facts and Procedural History

Father and Mother are the parents of Child, who was born on April 20, 2016. From a previous marriage to R.B., Mother also has another child, O.B., born March 8, 2013. Mother and R.B. had a history of committing domestic violence in front of O.B. and entered into an Informal Adjustment Agreement ("IAA") with the Indiana Department of Child Services ("IDCS") to address domestic violence issues in 2013. However, the IAA was ultimately closed after Mother and R.B. consistently failed to participate in services.

After Child was born, she, Mother, Father, and O.B. began living together. In January 2017, IDCS received, assessed, and substantiated a report against Mother and Father for engaging in domestic violence in the presence of Child

---

[1] J.S. ("Mother") does not participate in this appeal.

and O.B. In March of 2017, Father and Mother entered into an IAA under which Mother was to receive services and Father was ordered to "immediately report to the Family Case Manager any attempts by [Mother] to have access to or communicate with [Father]."[2] Ex. 4 at 90. Child resided with Father, and Father obtained a protective order that forbade Mother to come into contact with Father. Father obtained sole custody of Child in July 2017.

[5] Despite the protective order, in the summer of 2017, Father allowed Mother to move back into the home with Father and Child. On October 24, 2017, Mother and Father again engaged in domestic violence in the presence of Child. On October 25, 2017, IDCS filed a petition[3] alleging Child and O.B. were CHINS. Specifically, the CHINS petition asserted that Mother and Father engaged in domestic violence in the presence of Child and O.B.,[4] thus placing the children in danger, and that Father "was observed by DCS to be impaired as he was irate, violent, and smelled of alcohol[, and h]e made homicidal and suicidal threats in the presence of [Child]." Verified Petition Alleging Children to be Children in Need of Services, Cause No. 53C07-1710-JC-822.

---

[2] Thus, Father is incorrect when he asserts that the IAA did not order him "to do anything." Appellant's Br. at 15.

[3] Neither party to this proceeding provided in the record a copy of the CHINS petition. However, we were able to access that document through the court's electronic case management system, and we take judicial notice of that document pursuant to Indiana Rule of Evidence 201(a). *See, e.g.*, *Horton v. State*, 51 N.E.3d 1154, 1161-62 (Ind. 2016).

[4] The CHINS petition related to both Child and O.B. However, the CHINS finding as to O.B. is not at issue in this case.

[6] The court conducted a fact-finding hearing on February 7, February 21, and March 19, 2018, at which IDCS introduced as Exhibit 8 the mental health and substance use evaluation of Father conducted by Cornerstone in January 2018. In that evaluation, Father denied ever engaging in domestic violence and said Mother was the only one who engaged in such violence. Father also stated "that he has never been violent in his entire life," and he denied any history of intending to hurt others. Exhibit 8 at 125-27.

[7] On April 17, 2018, the trial court issued Findings of Fact and Conclusions of Law which stated in relevant part:

Findings of Fact

* * *

5. In June, 2016, [Child] was two months old. [Mother] and [Father] engaged in an altercation when [Father] came home intoxicated. [Mother] was holding [Child]. [Father] grabbed [Mother] so violently that her head bumped into [Child]'s. [Mother] almost dropped [Child]. Fortunately, the child was unhurt. [Mother] did not report this incident to law enforcement.

6. In October or November, 2016, [Mother] became upset with [Father]. [Father] had stolen [Mother]'s money to buy drugs. [Father] attacked [Mother]. [Mother] smashed [Father]'s guitar on the concrete.

7. On January 25, 2017, [Mother] threatened [Father] with a knife, punched him, and tried to strangle him. [Father] had a black eye. [O.B.] witnessed this altercation.

8. [Mother] was charged with Domestic Battery in the Presence of a Child less than 16 years old. The case is still pending. [Mother] admits that [O.B.] witnessed an altercation between herself and [Father]. However, she characterizes her actions as self-defense. She admits that there is a history of physical violence between the two. She believes [Father] is an alcoholic.

9. [Father] obtained an Order of Protection against [Mother] on February 14, 2017. The Order prohibits [Mother] from having contact with [Father].

10. On April 26, 2017, [Mother] violated the Protective Order by going to [Father]'s home in an attempt to take [Child]. [Father] called the police. [Mother] was arrested for Invasion of Privacy.

11. As a result of the altercation in the presence of [O.B.], [Mother] and [Father] entered into an Informal Adjustment Agreement with the DCS. The Informal Adjustment was approved by the Court on May 23, 2017.

12. On July 13, 2017, [Father] was granted sole legal and physical custody of [Child]. The Court noted that [Father] was providing [Child] with a safe and stable environment. [Mother]'s inability to control her anger was characterized as "troubling and not conducive to appropriate parenting."

13. Despite the Protective Order and Custody Order, [Father] allowed [Mother] to return to his home. He allowed her to live in the home off and on prior to October 24, 2017. Predictably, another altercation occurred on October 24, 2017. During the altercation, [Mother] grabbed [Father] by the neck and scratched him. He was bleeding from the elbow when Sheriff's Deputies arrived. When discussing the incident with DCS caseworker

Dennis Martin, [Father] began yelling. He threatened suicide. He also threatened a Family Case Manager. [Child] was in the room at the time.

14.     [Father] became very aggressive. He was screaming and incoherent. [Father] was detained by the Deputies and taken to Bloomington Hospital. He was admitted on a 72 hour hold for psychiatric evaluation. He was very belligerent to the ambulance staff. He smelled of alcohol.

15.     [Mother] denied staying with [Father]. She stated that [Father] was drunk and assaulted her. She stated that [Father] dragged her into the home where [Child] was present. [Child] was hitting [Father] in an attempt to get him to stop. During the altercation, [Mother] inadvertently kicked [Child] in the head. [Mother] had damage to her lip. [O.B.] was in the car when [Father] dragged her into the home. [Mother] stated that [O.B.]'s face was cut when [Father] broke a window in her vehicle. [Mother] had injuries to her arm and face.

16.     The investigating officer made no arrests because he could not determine who was at fault. He did note that [O.B.] was visibly distraught and had glass in his hair. Based on his observations, the officer felt the children were in danger because of the actions of the parents.

17.     [Father] suffers from clinical depression. He attempted suicide in May, 2016.

18.     [Father] completed a psychological evaluation in January, 2018, at Centerstone, the local mental health center. He was diagnosed with Major Depressive Disorder and Alcohol Use Disorder, Moderate. Intensive outpatient treatment (IOP) and individual therapy were recommended. A psychiatric assessment might be appropriate once he is engaged in individual therapy.

The evaluator noted that he might be a good candidate for the SoberLink program.

\* \* \*

21.     [Father] recently pled guilty to Operating while Intoxicated, a Level 6 Felony.

22.     [Mother] participated in individual therapy in 2017 and 2018.  The therapy did not prevent her from engaging in acts of domestic violence in the presence of her children.

Conclusions of Law

1.     Mother has engaged in a pattern of domestic violence in the presence of her children.  Treatment and intervention by the DCS has not been effective.  This pattern includes the following:

\* \* \*

i.     Although [Father] knew that he and [Mother] had a history of domestic violence in the presence of the children, he allowed [Mother] to move back into his home.  Predictably, on October 24, 2017, another incident of domestic violence occurred.  During the altercation, [Mother] grabbed [Father] by the neck and scratched him.  He was bleeding from the elbow.  [Mother] had injuries to her arm and face.  [Mother] stated that [Father] dragged her into his home while Child was present.  Child was hitting [Father] in an attempt to get him to stop.  [O.B.] was covered in glass when the car window was smashed during the altercation.  [O.B.] was visibly distraught and had glass in his hair.  The officers at

the scene felt the children were in danger because of the parents' actions.

\* \* \*

3.      [Child] is only two years old.  When two months old, her mother bumped her head and almost dropped her during an altercation with [Father].  In October, [Child] was hitting [Father] in an attempt to stop the altercation between [Father] and [Mother].  [Mother] accidentally kicked [Child] in the head during the altercation.

4.      These children are being raised in an atmosphere where domestic violence is a regular occurrence.  It is only a matter of time before they are injured.  During the incidents of domestic violence, the parents utterly fail to offer appropriate care and supervision for their children.  They are intent on engaging in their fights and are oblivious to the impact on the children.  Clearly, the physical and mental condition of the children is seriously impaired or seriously endangered as a result of the refusal and neglect of the parents to supply the children with necessary supervision.

5.      [Mother] has engaged in ongoing individual therapy over the past year.  This therapy has been wholly unproductive.  She continues to engage in acts of domestic violence.  She takes no responsibility for her actions.  She has signed two Informal Adjustment Agreements with DCS.  She failed to comply with the first Informal Adjustment Agreement and failed to benefit from services offered during the second.

6.      [Father] and [Mother] have a history of domestic violence in the presence of the children.  Despite that history, [Father] allowed [Mother] to return to his home.  This precipitated a new incident of domestic violence in the presence of the children.

[Father] cannot be trusted to enforce the terms of the protective order or the custody order. He cannot ensure that the children will not be exposed to more domestic violence between himself and [Mother].

\*\*\*

8.    In light of the parents' lengthy histories of domestic violence in front of the children, and their failure to benefit from services offered by DCS, it is unlikely that they will voluntarily participate in services designed to prevent future domestic violence without the coercive intervention of the Court.

9.    The Department of Child Services has proven, by a preponderance of the evidence, that [O.B.] and [Child] are Children in Need of Services.

App. at 8-13.

On May 3, 2018, IDCS filed a Pre-Dispositional Report and addendum recommending services for both parents, including Father's participation in a domestic violence prevention program. The trial court conducted a dispositional hearing on May 14, 2018, at which Father testified that IDCS had requested that he engage in domestic violence prevention services, but that his therapist believed he could address domestic violence through individual therapy alone. Family case manager ("FCM") Lindsey McDonald testified that IDCS recommended domestic battery services for both parents, but that IDCS intended to work with a local domestic violence service provider and Father's therapist to "get a therapeutic opinion" regarding which domestic violence

services were appropriate for Father. FCM McDonald stated that IDCS would abide by that therapeutic opinion. *Id.*

[9] On May 14, 2018, the trial court issued a Dispositional and Review Order in which it found that Child needs "a safe and stable home, free from domestic violence and neglect," and ordered Child to remain in placement with the paternal grandparents pending further proceedings. App. at 14. This appeal ensued.

# Discussion and Decision

## Standard of Review

[10] The juvenile court adjudicated Child to be a CHINS pursuant to Indiana Code Section 31-34-1-1, which provides:

> A child is a child in need of services if before the child becomes eighteen (18) years of age:
>
> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> (A) the child is not receiving; and

> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[11]  In reviewing a CHINS determination, we do not reweigh evidence or assess witness credibility but consider only the evidence in favor of the juvenile court's judgment, along with any reasonable inferences arising therefrom. *J.M. v. Ind. Dep't of Child Serv. (In re N.C.)*, 72 N.E.3d 519, 523 (Ind. Ct. App. 2017). When the trial court enters findings of fact and conclusions of law *sua sponte*, we apply a two-tiered standard of review to the issues covered by the findings: we consider, first, whether the evidence supports the findings and, second, whether the findings support the judgment. Ind. Trial Rule 52(A); *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014).

[12]  However, "we review the remaining issues under the general judgment standard, under which a judgment will be affirmed if it can be sustained on any legal theory supported by the evidence." *In re S.D.*, 2 N.E.3d at 1287. (quotation marks and citation omitted). Under the general judgment standard of review, the reviewing court "may look both to other findings and beyond the findings to the evidence of record to determine if the result is against the facts and circumstances before the court." *C.B. v. B.W.*, 985 N.E.2d 340, 344 (Ind. Ct. App. 2013), *trans. denied*. In deference to the trial court's proximity to the issues, an appellate court will "disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment." *In re Guardianship of B.H.*, 770 N.E.2d 283, 287-288 (Ind. 2002) (quotations and citations omitted).

# Sufficiency of Evidence that Child is a CHINS

[13] A CHINS adjudication under Indiana Code Section 31-34-1-1 requires three basic elements: "that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d at 1287. That final element "guards against unwarranted State interference in family life, reserving that intrusion for families where parents lack the ability to provide for their children, not merely where they encounter difficulty in meeting a child's needs." *Id*. (quotation marks and citation omitted).

[14] Courts should consider the family's condition not only at the time the CHINS case was filed, but also when the case is heard at the fact-finding hearing. *Gr.J. v. Ind. Dep't of Child Serv. (In re D.J.)*, 68 N.E.3d 574, 580 (Ind. 2017); *see also*, *E.B. v. Ind. Dep't of Child Serv. (In re Des.B.)*, 2 N.E.3d 828, 836 (Ind. Ct. App. 2014) (quotation marks and citation omitted) ("A CHINS adjudication may not be based solely on conditions that no longer exist, but the court should consider the family's situation at the time the case is heard by the court."). IDCS has the burden of proving by a preponderance of the evidence that the child is a CHINS. *See, e.g.*, *J.J. v. Ind. Dep't of Child Serv. (In re K.S.)*, 78 N.E.3d 740, 744 (Ind. Ct. App. 2017). IDCS may not simply rely upon allegations; rather, it must gather the facts and the evidence to support its CHINS petition. *D.B. v. Ind. Dep't of Child Serv. (In re D.B.)*, 43 N.E.3d 599, 606 (Ind. Ct. App. 2015).

[15]     Here, the trial court based its CHINS determination on the parents' repeated episodes of domestic violence in the presence of Child.[5]  And there was abundant evidence in the record that Father's and Mother's violent fights in the presence of Child endangered her both physically and emotionally.  When Child was only two months old, Father grabbed Mother so hard that her head struck Child and she almost dropped Child.  And right before the CHINS petition was filed, the parents' violent fighting caused Mother to accidentally kick Child and Child to hit Father in an attempt to make him stop fighting.  Moreover, there was evidence that neither Father nor Mother had any compunction about physically assaulting each other in the presence of Child's half-sibling, O.B.  O.B. witnessed repeated instances of domestic violence, causing him to be afraid.  In the most recent instance, a car window was shattered due to the parents' physical altercation, and it caused glass to fall down onto O.B. while he was sitting in the car.  All of that evidence supports the trial court's findings that Father and Mother engaged in repeated instances of domestic violence in the presence of Child and her half-sibling and, in doing so, seriously endangered Child.[6]

---

[5]  Although the CHINS petition referenced Father's alcohol use and mental health in addition to the domestic violence, the trial court only based its CHINS decision on the domestic violence in the presence of Child.  App. at 12-13, Conclusions 4-8.  Therefore, we do not address issues of substance use or mental health.

[6]  Furthermore, we note that the "CHINS statute does not require the juvenile court and the DCS to wait until a child is physically or emotionally harmed to intervene."  *M.W.B. v. Ind. Dep't of Child Serv.* (*In re K.B.*), 24 N.E.3d 997, 1003-04 (Ind. Ct. App. 2015).  Rather, IDCS must only show that the parents' actions seriously endanger the child.  I.C. § 31-34-1-1.

[16]     And those findings support the trial court's conclusion that "[d]uring the incidents of domestic violence, the parents utterly fail to offer appropriate care and supervision of their children." App. at 12. Instead, the parents' repeated acts of violence against each other put the children's physical and emotional safety at great risk. The findings also support the trial court's conclusion that the domestic violence in the presence of the children was unlikely to end without the coercive intervention of the court. Father knew that he and Mother had a history of committing violence against each other in the presence of Child, yet he allowed Mother to return to his home even when a protective order was in place, leading to more violence in Child's presence. The trial court did not err in concluding that "[Father] cannot be trusted to enforce the terms of the protective order or the custody order[,]" nor can he "ensure that the children will not be exposed to more domestic violence between himself and [Mother]." *Id.* at 13.

[17]     Father contends that IDCS failed to establish that the condition of domestic violence had not been remedied at the time of the fact-finding hearing. We disagree. Even "a single incident of domestic violence in a child's presence may support a CHINS finding, and it need not necessarily be repetitive." *M.P. v. Ind. Dep't of Child Serv.* (*Matter of D.P.*), 72 N.E.3d 976, 984 (Ind. Ct. App. 2017). But here there was evidence of a pattern of domestic violence in the presence of Child and her half-sibling. Such a pattern may support a CHINS finding, even if there have been no further reports of domestic violence at the time of the fact-finding hearing. *M.W.B. v. Ind. Dep't of Child Serv.* (*In re K.B.*),

24 N.E.3d 997, 1003-04 (Ind. Ct. App. 2015) (noting that, although there were no further reported cases of violence when the trial court issued its CHINS finding, that "by no means proves that … the domestic violence problems had been solved"). Here, while Father does have a protective order in place, the evidence established that he has shown a willingness in the past to ignore the requirements of such an order and to ignore the Informal Adjustment requirement that he immediately inform IDCS if Mother attempted to contact him. Father has also exhibited an unwillingness to take responsibility for his part in the domestic violence, insisting at the Cornerstone evaluation that he had "never been violent in his entire life." Ex. 8 at 125. Further, at the time of the fact-finding hearing, Father had not yet attended domestic violence prevention services. Thus, it is reasonable to infer that the fact that no further domestic violence had taken place in front of the children at the time of the CHINS hearing was only due to the fact that the children had been removed from Mother's and Father's care.

# Conclusion

[18] The evidence supported the finding that Child was a CHINS. Specifically, the evidence of the parents' pattern of engaging in domestic violence in the presence of Child (and her half-sibling), leading to physical and/or emotional injury to Child, and Father's unwillingness to enforce a protective order against Mother, supported the conclusions that Father's actions endangered Child and

that her need for supervision and care were not being met and were unlikely to be met in the future without the coercive intervention of the court.

[19] Affirmed.

Mathias, J., and Bradford, J., concur.