## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 12 2020, 8:42 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dorothy Ferguson
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Robert J. Henke
Monika Prekopa Talbot
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of K.J. (Child in Need of Services):

C.J. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

June 12, 2020

Court of Appeals Case No.
19A-JC-2760

Appeal from the Madison Circuit Court

The Honorable G. George Pancol, Judge

Trial Court Cause No.
48C02-1907-JC-298

**Bailey, Judge.**

# Case Summary

Following fact-finding and dispositional hearings and orders, C.J. ("Father") appeals[1] the trial court's order adjudicating his child, K.J. ("Child"), to be a Child in Need of Services ("CHINS"). He raises one issue on appeal, namely, whether there is sufficient evidence to support the determination that Child is a CHINS.

We affirm.

# Facts and Procedural History

Child, born December 28, 2018, is the only child of Father. T.J. ("Mother") has five other children, none of which are in her care. On July 22, 2019, the Indiana Department of Child Services ("DCS") filed a petition alleging Child was a CHINS. Specifically, the CHINS petition alleged that, on July 22, Mother and Father (collectively, "Parents") were "under the influence of alcohol and/or marijuana" and "inebriated" while Child was present in the home, and neither Parent had "a plan for child supervision while [they were] under the influence." App. at 64.

The court conducted a fact-finding hearing on August 13 and September 4 and, in an order dated September 25, issued the following findings of fact—among

---

[1] T.J. ("Mother") does not actively participate in this appeal.

others—in support of its Order finding Child to be a CHINS. On the evening of July 21, 2019, Parents went out to dinner and consumed some alcoholic beverages. During that time, Child's maternal grandmother ("maternal grandmother") was at Parents' home babysitting Child. After Parents returned to their home at around midnight, they had a verbal disagreement, and Mother told Father she was going to leave with Child. Mother put Child in a car seat. Father took Child, in the car seat, to Parents' bedroom and closed the door.

In the early morning hours of July 22, maternal grandmother called the police and reported the domestic disturbance between Parents. Upon arriving at Parents' home at approximately 4:00 a.m., Anderson Police Department ("APD") officers found Mother crying, upset, and "[e]mitting a strong odor of alcohol." *Id*. at 40. Maternal grandmother was no longer at the residence. Mother informed the officers that Father had taken Child into the back bedroom and was intoxicated.

APD Officer Ashley Gravely ("Officer Gravely") went to the back bedroom and noticed the doorknob to the room was missing. With Father's help, Officer Gravely was eventually able to open the door, and she saw that Child was inside the room in his car seat. Officer Gravely observed a "strong odor of alcohol on [Father's] breath [and] slurred speech." *Id*. Based on her experience as an officer, Officer Gravely believed Father was intoxicated. Father had "aggressive body language," refused to obey orders including orders to remain seated, wobbled when he stood, and repeatedly grabbed onto a desk to keep

from falling over. *Id.* Officer Gravely feared Father would fall on and injure Child.

[7] Officer Gravely called for backup and APD Officer Brandon Reynolds ("Officer Reynolds") arrived on the scene soon thereafter. Officer Reynolds observed that Father was "intoxicated [and] extremely aggressive," and Officer Reynolds "worried Father would stumble and fall on [Child.]" *Id.* at 41. Officer Reynolds also observed that Mother "smelled of alcohol." *Id.*

[8] DCS Family Case Manager ("FCM") Rachel Gershin ("FCM Gershin") arrived at the Parents' house while the APD officers were talking to Father in the back bedroom. Child's paternal grandmother, ("paternal grandmother"), arrived at the home at the same time as FCM Gershin arrived. FCM Gershin was responding to a report that there were "two parents under the influence without a sober care giver available." *Id.* at 42. FCM Gershin attempted to administer drug screens on Father but was unable to successfully do so because Father continued to talk despite the officers' commands to remain quiet. FCM Gershin was able to do a drug screen on Mother which was positive for opiates, hydrocodone, and alcohol. Paternal grandmother informed FCM Gershin that "these types of arguments happened [between Parents] once a month on date nights when they drink." *Id.* at 43. Paternal grandmother also reported that the domestic disturbances had become physical in the past.

[9] Upon investigation of the home, Officer Gravely found a glass pipe on the living room table within reach of Child. The pipe had residue and an odor

consistent with marijuana use. Mother admitted to Officer Gravely that Parents had smoked marijuana earlier that evening.

[10] Mother admitted that none of her other five children were in her care "due to previous instances with DCS." *Id.* Mother had been convicted of neglect of a Dependent in 2017 and was placed on probation. Mother admitted at the fact finding hearing that she was still on probation and, as a condition of probation, was prohibited from consuming "illegal substances or alcohol [or] enter[ing] any establishment that serves alcoholic beverages as its primary business." *Id.* Officer Reynolds testified at the August 13 fact-finding hearing that he had requested that a warrant for Mother's arrest be issued because she was alleged to have stolen alcohol from a store that very morning, i.e., August 13, 2019.

[11] Father admitted that he had previous convictions for driving while intoxicated in 2006, 2011, and 2015. Father also admitted that his driver's license was suspended but he had driven himself and Mother to and from dinner on the evening of July 21 and/or morning of July 22, 2019.

[12] FCM Catherine Briney ("FCM Briney") also testified at the fact-finding hearing regarding the instant CHINS case and some of the other DCS cases involving Mother and other children. She stated that substance abuse was "a factor" in Mother's other DCS cases. *Id.* at 44. FCM Briney testified that, in the instant CHINS case, she had offered Mother and Father services even though there was not yet a court order for services. Both Mother and Father refused additional services, including additional drug screens. FCM Briney stated she

had ongoing safety concerns about Child being in Parents' care due to Parents' substance abuse.

[13] The trial court concluded that Child was a CHINS because "Mother['s] and Father's domestic disputes, substance abuse issues, and illegal activity pose an inability to properly attend to their parental duties for [Child] without the court's and [DCS's] intervention." *Id*. at 45. On October 9, 2019, the trial court held a dispositional hearing and issued an order continuing Child's placement outside the home. That dispositional order also ordered Parents to engage in services, including random drug screens. Father now appeals the CHINS order.

# Discussion and Decision

[14] Father challenges the sufficiency of the evidence to support the CHINS determination. In reviewing a CHINS determination,

> we give due regard to the trial court's ability to assess the credibility of witnesses. *In re Des.B.*, 2 N.E.3d 828, 836 (Ind. Ct. App. 2014). We neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the trial court's decision. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Where the trial court issues findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.P.*, 949 N.E.2d 395, 400 (Ind. Ct. App. 2011). We consider first whether the evidence supports the findings and then whether the findings support the judgment. *Id*. We will set aside the trial court's findings and conclusions only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id*. Appellate

> courts generally grant latitude and deference to trial courts in family law matters. *Matter of E.K.*, 83 N.E.3d 1256, 1260 (Ind. Ct. App. 2017), *trans. denied* (2018). This deference recognizes the trial court's "unique ability to see the witnesses, observe their demeanor, and scrutinize their testimony, as opposed to this court's only being able to review a cold transcript of the record." *Id.*

*J.M. v. Ind. Dep't of Child Servs.* (*In re A.M.*), 121 N.E.3d 556, 561-62 (Ind. Ct. App. 2019), *trans. denied*.

[15] A CHINS adjudication under Indiana Code Section 31-34-1-1[2] requires three basic elements: "that the parent's actions or inactions have seriously endangered the child, that the child's needs are unmet, and (perhaps most critically) that those needs are unlikely to be met without State coercion." *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). Courts should consider the family's condition not only at the time the CHINS case was filed, but also when the case is heard at the fact-finding hearing. *Gr.J. v. Ind. Dep't of Child Serv.* (*In re D.J.*), 68 N.E.3d 574, 580 (Ind. 2017). DCS has the burden of proving by a preponderance of the evidence that the child is a CHINS. *See, e.g., J.J. v. Ind.*

---

[2] Indiana Code Section 31-34-1-1 provides:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

    (A) the child is not receiving; and

    (B) is unlikely to be provided or accepted without the coercive intervention of the court.

*Dep't of Child Serv.* (*In re K.S.*), 78 N.E.3d 740, 744 (Ind. Ct. App. 2017). DCS may not simply rely upon allegations; rather, it must gather the facts and the evidence to support its CHINS petition. *D.B. v. Ind. Dep't of Child Serv.* (*In re D.B.*), 43 N.E.3d 599, 606 (Ind. Ct. App. 2015).

[16] Here, the trial court based its CHINS determination on evidence of Parents' domestic disputes, substance abuse issues, and illegal activity both at the time Child was removed from their home and at the time of the CHINS fact finding hearing. Specifically, there was sufficient evidence that, on July 21-22, 2019, Parents were both intoxicated while in the home with Child and when no sober caregiver was present to care for Child. Father was intoxicated to the point where he was slurring his speech and stumbling, causing law enforcement officers and FCM Gershin to fear for Child's safety in the home. There was also evidence that both Parents had a history of contact with the criminal justice system due, at least in part, to their alcohol abuse. There was further evidence that both Parents had a history of engaging in domestic disturbances while intoxicated. Yet, at the time of the fact-finding hearing, neither Parent had sought or obtained any treatment for substance abuse, nor did they volunteer to take drug screens. In fact, Mother had a new warrant out for her arrest for allegedly stealing alcohol from a store on the very morning of the CHINS fact-finding hearing. From all of that evidence, the trial court reasonably inferred that Parents had seriously endangered Child's safety at the time Child was removed, and that they had an ongoing inability to safely care for Child due to their alcohol and/or drug abuse. Although there was no evidence that Child

was actually harmed by Parents' intoxication on July 21-22, the CHINS statute does not require the trial court and DCS to wait until a child is physically or emotionally harmed to intervene; rather, a child may be determined to be a CHINS if his or her physical or mental condition is seriously endangered. *See e.g.*, *K.B. v. Ind. Dep't of Child Serv.*, 24 N.E.3d 997, 1003 (Ind. Ct. App. 2015).

[17] Because there was sufficient evidence that Child was seriously endangered by Parents' actions at the time of removal, Child's need for safety was unmet, and Parents were unlikely to be able to meet Child's need for safety without court intervention, the CHINS adjudication was not clearly erroneous.

[18] Affirmed.

Crone, J., and Altice, J., concur.